FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 0 8 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC, a New York limited liability company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| SKEE-BALL, INC., a Pennsylvania corporation, | ) ) ) |
| Defendant. | ) ) ) |

CV 11 - 5476

Civil Action No.: _____

COMPLAINT

IRIZARRY, J

JURY TRIAL DEMANDED

BLOOM, M.J.

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:
CANCELATION OF TRADEMARK, DECLARATORY JUDGMENT, BREACH OF
CONTRACT, BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING,
UNFAIR COMPETITION AND SHERMAN ACT VIOLATION**

PRELIMINARY STATEMENT

1.      This action seeks injunctive relief and damages on behalf of Plaintiff Full Circle

United, LLC ("Full Circle") against Skee-ball, Inc. ("SBI"). Full Circle runs a skee-ball league

where participants play skee-ball against each other using machines manufactured by SBI. SBI

has wrongfully asserted a generic and invalid trademark against Full Circle to Full Circle's

detriment and damage. As a result, Full Circle seeks a judicial order canceling SBI's federal

trademark registration for the name "SKEE-BALL," which is a generic term for skee-ball games.

Full Circle also seeks declaratory relief declaring that its use of its own registered trademark

BREWSKEE-BALL® and its use of the name "skee-ball" do not infringe any trademark rights

asserted by SBI, and that if any trademark rights were to exist in the term "skee-ball" that Full

Circle's use constitutes fair use and nominative fair use, particularly because Full Circle has only

owned and used skee-ball games manufactured by SBI. Full Circle seeks damages for unfair

competition stemming from SBI's unlawful assertion of a generic trademark used to damage Full Circle's business.

2.     SBI is liable for breach of contract, breach of the covenant of good faith and fair dealing, and unfair competition. In 2005, the founders of Full Circle met with the CEO of SBI, and SBI indicated that it had no objection to Full Circle executing on its plan to introduce the children's game as entertainment for adults in bars and in league play. Full Circle maintained its skee-ball league for years after that without objection from SBI. On the contrary, SBI and Full Circle later entered into a written contract to explore a potential joint venture or other working relationship, and that agreement included a confidentiality provision to protect Full Circle's confidential information. The agreement is hereinafter referred to as the "2010 Agreement." After signing the 2010 Agreement and being provided confidential information from Full Circle, SBI materially breached the agreement, and, on information and belief, decided to pursue trademark infringement against Full Circle in order to eliminate Full Circle from the business and pursue Full Circle's business plans alone to keep the profits exclusively for itself. These acts have damaged Full Circle and constitute breach of the agreement, breach of the covenant of good faith and fair dealing, and unfair business practices. SBI's unlawful assertion of a generic term as a trademark, after learning of Full Circle's confidential information in order to assert an illegal monopoly and harm Full Circle, also constitutes a violation of Section 2 of the Sherman Act.

JURISDICTION AND VENUE

1.     Jurisdiction of this action is founded upon 15 U.S.C. §§ 1121, 1119, 1064 and 28 U.S.C. §§ 1331, 1337, and 1338.

2.     Jurisdiction of this action also is founded upon 28 U.S.C. § 1332, as the parties are citizens of different states and Defendant is a citizen or subject of a foreign state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. SBI also expressly consented to jurisdiction in New York in the 2010 Agreement.

3.     Jurisdiction of this action is also founded upon 15 U.S.C. § 15 for actions brought for violations of the Sherman Act.

2

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391, for at least the following reasons:

    a.  The trademark registration for "SKEE-BALL" for which Full Circle seeks cancelation was issued to its original registrant in this district;

    b.  Full Circle is based in Brooklyn, New York;

    c.  Full Circle's trademark BREWSKEE-BALL® is registered to the company in this district;

    d.  Communications involving Full Circle with Defendant and its agents have been from this district;

    e.  Defendant's threats against Full Circle were sent to this district; and

    f.   A substantial part of the events giving rise to the claim occurred in this district.

5.    Venue also is proper in this district pursuant to 28 U.S.C. § 1391 in that Defendant is subject to personal jurisdiction in this district at the time the action is commenced. Venue also is proper in this district pursuant to 28 U.S.C. § 1400.

6.    Furthermore, venue is proper in this district due to the express written agreement of the parties. Pursuant to the 2010 Agreement, which was materially breached by SBI and is a subject of this suit, "The parties agree that any dispute arising under this Agreement will be resolved in the state or federal courts within the District of New York and each Party expressly consents to jurisdiction therein."

## PARTIES

7.    Full Circle United, LLC is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business in Brooklyn, New York.

8.    Skee-ball, Inc. is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business at 121 Liberty Lane, Chalfont, Pennsylvania 18914.

3

## STATEMENT OF FACTS

9.      Skee-ball is a type of arcade game with a flat surface bounded on two sides, leading to a ramp. Beyond the ramp are holes associated with point values. A player rolls the ball toward the ramp in an attempt to cause the ball to become airborne and land in one of the holes. On information and belief, skee-ball as a type of game has been in existence for more than 100 years. Several different companies have manufactured skee-ball machines over the years and continue to manufacture them, including SBI, the defendant in this action.

10.     Traditionally, skee-ball has been considered a children's game, particularly because skee-ball machines in arcades reward the user with paper tickets that arcades allow players to trade for toys appealing to children.

11.     In 2005, two young entrepreneurs, Eric Pavony and Evan Tobias, had an idea. They thought they could reinvigorate interest in skee-ball by introducing it into an adult setting, specifically bars, and making the game more fun for adults by employing a league play format. They would call the league "Brewskee-Ball." That year, Messrs. Pavony and Tobias took their idea to SBI and had an in-person meeting with Joseph Sladek, SBI's CEO, at his office in Pennsylvania.

12.     During the meeting, Messrs. Pavony and Tobias told Mr. Sladek their idea. He told them that SBI was a machine manufacturer and wasn't in the business of skee-ball leagues, but told them SBI agreed with their pursuing their Brewskee-Ball league and wished them luck. This constituted a verbal agreement between the parties that Full Circle would be permitted without interference by SBI to form and maintain its BREWSKEE-BALL® league, which in turn would inure to SBI's benefit by providing value to SBI by promoting skee-ball and in turn increasing the good will and demand for SBI's products (this agreement hereinafter referred to as the "2005 Agreement").

13.     Based on SBI's representations, Pavony and Tobias founded Full Circle United, LLC, launched the BREWSKEE-BALL® league, and obtained a federal trademark for BREWSKEE-BALL® to avoid confusion with imitators, which soon thereafter began cropping up with competing leagues.

4

14.     Due in large measure on Full Circle's efforts, skee-ball became more popular as a sport and source of entertainment for adults. On information and belief, Full Circle marketed the concept of skee-ball in ways SBI never had. Subsesquently, SBI contacted Full Circle and offered to have discussions to see if the two companies could work together.

15.     Full Circle and SBI entered into a confidentiality agreement so that Full Circle could be protected when it divulged its plans to SBI to see if they could work together. The written agreement was executed by both sides effective March 9, 2010. A true and correct copy of that agreement is attached hereto as Exhibit 1. The agreement has a venue provision that states that relevant disputes between the companies must be litigated in New York.

16.     Per the terms of that agreement, Full Circle provided confidential information to SBI, including but not limited to confidential information regarding its business operations and business plans.

17.     Little more than a month after entering the 2010 Agreement, on or about April 16, 2010, an attorney for SBI threatened Full Circle with legal action in a cease and desist letter. A true and correct copy of that letter is attached hereto as Exhibit 2. The letter wrongfully asserts that SBI has trademark ownership of the phrase "skee-ball" to describe skee-ball games, when in fact the term is generic to describe skee-ball games.

18.     After the cease and desist letter was received by Full Circle, Full Circle expressed its concern and was led by representatives of SBI to believe it was a non-issue and would not be pursued by SBI. The parties continued to have discussions about working together jointly. However, then, on or about July 6, 2011, counsel for SBI sent Full Circle a second cease and desist letter, a true and correct copy of which is attached hereto as Exhibit 3.

19.     Counsel for Full Circle responded to the letter. A true and correct copy of that letter is attached hereto as Exhibit 4. On October 5, 2011, SBI filed suit against Full Circle, not in New York, where Full Circle is located, nor in Pennsylvania, where SBI is located, but in San Francisco, all the way across the country from both companies.

20.     It became clear to Full Circle that, on information and belief, SBI, upon obtaining Full Circle confidential information, decided to breach the agreement, threaten Full Circle, and

5

then obtain the benefit of Full Circle's business and plans exclusively for itself, in order to illegally assert a monopoly over the generic term "skee-ball" and, on information and belief, use that asserted monopoly to obtain anticompetitive advantage over Full Circle with respect to Full Circle's current business and future business plans.

21.    SBI's threatening letter and its lawsuit are inappropriate in that, among other things, they wrongfully assert that SBI can control use of the name "skee-ball" as pertaining to skee-ball games, even though the term is generic and cannot serve as the basis for trademark rights.

22.    Full Circle has and continues to be damaged by SBI's improper assertion of rights in a generic term, as well as assertion of claims against Full Circle after having expressly given permission for Full Circle's actions and encouraged those actions.

COUNT I – CANCELATION OF "SKEE-BALL" TRADEMARK

(15 U.S.C. §§ 1064 & 1119)

23.    Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1 through 22 above.

24.    Pursuant to 15 U.S.C. § 1119, the Court may "order the cancelation of registrations." Grounds for cancelation of a trademark registration in this case include at least those set forth in 15 U.S.C. § 1064.

25.    Full Circle believes that it will be damaged by the ongoing registration of the mark "SKEE-BALL" on the principal register established by the Trademark Act. Furthermore, Full Circle has been and continues to be damaged by such registration, as well as by SBI's assertion of trademark rights, which are based upon such registration.

26.    Additionally, an actual controversy has arisen and now exists between Full Circle, on the one hand, and the Defendant, on the other hand, concerning whether SBI has any trademark rights in the term "skee-ball" as pertaining to skee-ball games, and whether U.S. Trademark Registration No. 0256496, a true and correct copy of which is attached hereto as Exhibit 5, is invalid and should be canceled.

6

27.     This Court should order U.S. Trademark Registration No. 0256496 for "SKEE-BALL" canceled. Grounds for such cancelation include at least those set forth in 15 U.S.C. § 1064, including that "skee-ball" is the generic name for the goods or services and/or a portion thereof, for which it is registered, as well as a functional term, and, on information and below, that the trademark for "skee-ball" effectively has been abandoned by its registered owner. On information and belief, SBI also has failed over the years and continues to fail to consistently enforce any trademark rights to the name "skee-ball," and permits members of the public to use the term "skee-ball" to generically refer to skee-ball games, which it has done for decades.

28.     Additionally, U.S. Trademark Registration No. 0256496, by its own terms, covers only a "game in the nature of a bowling game and parts thereof." Yet SBI is not asserting its rights in the mark for bowling games. Instead, SBI improperly has applied the mark to skee-ball games and has inappropriately asserted it against Full Circle to attempt to stop Full Circle from using the term "skee-ball" to describe skee-ball games or a skee-ball league or Full Circle's registered trademark for BREWSKEE-BALL® as applied to its league.

29.     Full Circle, therefore, is entitled to and seeks an order canceling U.S. Trademark Registration No. 0256496.

COUNT II – DECLARATORY JUDGMENT

(28 U.S.C. §§ 2201 - 2202)

30.     Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1 through 29 above.

31.     An actual controversy has arisen and now exists between Full Circle, on the one hand, and the Defendant, on the other hand, concerning whether Full Circle may refer to its league as a "skee-ball league" and refer to machines made by SBI as "skee-ball machines."

32.     Full Circle contends it may use the phrase "skee-ball" to describe its skee-ball league, as well as the skee-ball machines made by SBI and owned by Full Circle, without infringing on any valid trademark of SBI. Full Circle contends that such use is permitted for several reasons, including but not limited to the fact that the name "skee-ball" is generic, that Full Circle's use constitutes fair use and nominative fair use, and that SBI has permitted such use

7

by Full Circle and is estopped from asserting that Full Circle cannot now use the term to describe the game or its league. Full Circle also contends it may use its own trademark BREWSKEE-BALL® without infringing on any valid trademark of SBI. Full Circle is the owner of U.S. Trademark Registration No. 3389014 for BREWSKEE-BALL®, a true and correct copy of which is attached hereto as Exhibit 6. Full Circle's trademark is registered under Class 41 for entertainment services, which is a different and nonoverlapping class from SBI's registration for "SKEE BALL," which is registered under Class 28 and applies only to the game itself. The use of the mark BREWSKEE-BALL® for entertainment services is not likely to be confused with the term "skee-ball" as applied to the skee-ball machines themselves.

33.     Full Circle is informed and believes that SBI contends that Full Circle may not use the phrase "skee-ball" to describe Full Circle's skee-ball league or the skee-ball machines made by SBI, which Full Circle owns, without infringing on any valid trademark of SBI. Full Circle further is informed and believes that SBI contends that Full Circle may not use Full Circle's own trademark BREWSKEE-BALL® without infringing on any valid trademark of SBI.

34.     SBI has threatened Full Circle with judicial action regarding the above controversy, and filed an action in the Northern District of California asserting trademark infringement and seeking to cancel Full Circle's BREWSKEE-BALL® trademark. That venue is improper, however, as neither party is located in California (Full Circle is located in this district and SBI is located in the neighboring district of the Eastern District of Pennsylvania), and because the parties expressly agreed that disputes that involve the 2010 Agreement are subject to the exclusive jurisdiction of New York courts, and the facts related to Full Circle's contract action relate to SBI's infringement allegations such that it would be inappropriate to have them adjudicated in a separate action.

35.     A judicial determination is necessary and appropriate at this time under the circumstances in order that the parties may ascertain their rights and duties as aforementioned. Said controversy is incapable of resolution without judicial adjudication. Accordingly, Full Circle has no plain, speedy and adequate remedy at law, and requests a declaratory judgment, adjudging and declaring that Full Circle is entitled to use the term "skee-ball" in relation to its

8

skee-ball league, its use of skee-ball machines, and its use of its BREWSKEE-BALL®

trademark, as well as any further necessary or proper relief based on a declaratory judgment.

## COUNT III – INJUNCTIVE RELIEF

### (28 U.S.C. § 2202)

36.     Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1

through 35 above.

37.     Notwithstanding that SBI may not maintain a trademark registration for the term

"skee-ball," it has, by and through its acts and omissions, waived any assertion of rights against

Full Circle for Full Circle's creation of and continuance of a skee-ball league as well as

describing the league as a skee-ball league. SBI's failure to police use of its registered mark

consistently also means that SBI may not now assert that registration against Full Circle.

38.     Full Circle's actions with respect to any use of the term "skee-ball" and

BREWSKEE-BALL® were done based upon representations by SBI that SBI did not object to

such use. As a result, SBI is estopped from asserting any claims against Full Circle related to

Full Circle's use of the phrase "skee-ball" with respect to its league as well as use of its

BREWSKEE-BALL® trademark. Full Circle's use of the term "skee-ball" also constitutes fair

use and nominative fair use.

39.     Full Circle has been and continues to be damaged by SBI's wrongful assertion

that Full Circle may not use the phrase "skee-ball" to describe its league, its skee-ball machine,

or to use its BREWSKEE-BALL® trademark.

40.     Therefore, Full Circle is entitled to and seeks an order from this Court enjoining

SBI from asserting in any document or statement that Full Circle may not use the phrase "skee-

ball" to describe its league or its skee-ball machines or use its own BREWSKEE-BALL®

trademark.

## COUNT IV – BREACH OF CONTRACT

41.     Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1

through 40 above.

42.     Full Circle and SBI entered into a valid and enforceable oral agreement, referred to herein as the 2005 Agreement, in which SBI would permit Full Circle to form and maintain its BREWSKEE-BALL® league, which would and did, on information and belief, provide value to SBI by promoting skee-ball and in turn increasing the good will and demand for SBI's products. This 2005 Agreement was reconfirmed in repeated communications and the overall course of dealing between the parties subsequent to the parties entering into it.

43.     Full Circle and SBI entered into a valid and enforceable written agreement, referred to herein as the 2010 Agreement, true and correct a copy of which is attached hereto as Exhibit 1.

44.     Full Circle performed its obligations in accordance with the 2005 Agreement and the 2010 Agreement.

45.     Defendant SBI materially breached the agreements between SBI and Full Circle, including the 2005 Agreement and the 2010 Agreement, including at least by the acts and omissions described in this Complaint.

46.     Full Circle has sustained damages as a direct result of the Defendant's breaches and is entitled to an award of damages sufficient to compensate it for these damages in an amount to be proven at trial but in any event more than the minimum amount required for diversity jurisdiction in this Court.

47.     On information and belief, by its course of conduct in entering these Agreements and materially breaching them, including by using the confidential information gained to decide to sue Full Circle across the country and engage legal counsel there, SBI has acted with disinterested malevolence and has intentionally sought to inflict economic injury on Full Circle. Full Circle is entitled to recover its attorneys' fees and costs for this action.

COUNT V – BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING

48.     Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1 through 47 above.

49.     Each of the 2005 Agreement and 2010 Agreement included an implied covenant of good faith and fair dealing.

10

50.     SBI failed to deal fairly and in good faith with Full Circle with respect to the 2005 Agreement and 2010 Agreement, and by SBI's acts and omissions described above, SBI deprived Full Circle the right to receive benefits under the agreements.

51.     Full Circle was and continues to be damaged by SBI's breach of the covenant of good faith and fair dealing, and as a result Full Circle is entitled to an award of damages.

COUNT VI – UNFAIR COMPETITION

52.     Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1 through 51 above.

53.     In its actions and omissions as described above, on information and belief, SBI acted with purposeful intent to injure Full Circle and drive Full Circle out of business so that SBI could engage in the same businesses or enter into agreements with others to engage in the businesses Full Circle now practices or plans to practice as disclosed under the 2010 Agreement including confidentiality protections.

54.     By these actions, including threats and legal action to cancel Full Circle's trademark and stop it from engaging in its business, on information and belief, SBI has acted in bad faith.

55.     SBI's anticompetitive actions against Full Circle have damaged Full Circle, and Full Circle is entitled to and seeks damages to compensate it as well as an injunction to stop SBI's unlawful acts.

COUNT VII – SHERMAN ACT VIOLATION

(15 U.S.C. §§ 2 & 15)

56.     Full Circle hereby incorporates by reference, as if fully restated, paragraphs 1 through 55 above.

57.     SBI has engaged in anticompetitive acts that constitute violations of Section 2 of the Sherman Act. For example, SBI has and continues to unlawfully assert a monopoly over the term "skee-ball" to describe skee-ball games, and to threaten and bring unlawful legal action against Full Circle with respect to the same.

11

58.     By its use of its alleged trademark rights used unlawfully, on information and belief, SBI has effectively obtained possession of monopoly power in the relevant market regarding use of the term "skee-ball" to describe skee-ball games, as well as obtained market power in the skee-ball game market, and has willfully acquired and maintained that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.

59.     On information and belief, SBI has further engaged in unlawful anticompetitive conduct by attempting to drive Full Circle out of business, including the business of running a skee-ball league and other confidential business plans Full Circle communicated to SBI under a confidentiality agreement that SBI has breached (the 2010 Agreement) so that it may engage without competition from Full Circle in the same businesses or enter into agreements with others to engage in the businesses Full Circle now practices or plans to practice.

60.     Additionally, SBI has not consistently taken action to enforce any rights in the term "skee-ball" as a trademark, and its act of selectively asserting the mark against Full Circle and not other users of the term constitutes monopolistic activity in violation of Section 2 of the Sherman Act.

61.     Full Circle has been damaged by SBI's unlawful, monopolistic acts, and, pursuant to 15 U.S.C. § 15(a), Full Circle is entitled to treble damages, the cost of the suit including its attorneys' fees, and prejudgment interest.

WHEREFORE, Plaintiff Full Circles prays for relief as follows:

1.     For a judgment and injunction ordering the United States Patent and Trademark Office to cancel the U.S. Trademark Registration No. 0256496 for SKEE-BALL;

2.     For a declaratory judgment finding that Full Circle has not infringed and will not infringe on any valid trademark rights held by SBI via use of the phrase "skee-ball" to describe Full Circle's skee-ball league or Full's Circle's skee-ball machines manufactured by SBI, or via use of Full Circle's use of its own registered trademark BREWSKEE-BALL®, and an injunction against SBI publicly stating that such use constitutes infringement;

12

3.     For a judgment that SBI is liable to Full Circle for breach of contract, breach of the covenant of good faith and fair dealing, and unfair competition;

4.     For a judgment that SBI is liable for violation of Section 2 of the Sherman Act for its unlawful, monopolistic acts;

5.     For damages in an amount to be determined at trial, but in any event in excess of the minimum jurisdiction of this Court for the purposes of diversity jurisdiction, including for violation of the Sherman Act treble damages;

6.     For its reasonable attorneys' fees disbursed and incurred in this action;

7.     For prejudgment interest on the award of damages;

8.     On all causes of action, for costs herein; and

9.     For such other and further relief as the Court deems just and proper.

<u>JURY TRIAL DEMANDED</u>

Plaintiff Full Circle hereby demands a trial by jury.

Dated: New York, New York
       November 8, 2011

                          SEDGWICK LLP

                          By:  /s/ J. Gregory Lahr
                               J. Gregory Lahr (JL 9969)
                               gregory.lahr@sedgwicklaw.com

                          125 Broad Street, 39th Floor
                          New York, New York 10004-2400
                          Telephone:    212.898.4014
                          Facsimile:    212.422.0925

                          Robert Harkins (subject to pro hac vice application)
                          robert.harkins@sedgwicklaw.com
                          333 Bush Street, 30th Floor
                          San Francisco, California 94105
                          Telephone:    415.781.7900
                          Facsimile:    415.781.2635

                          Attorneys for Plaintiff

13

## CONFIDENTIALITY AGREEMENT

This confidentiality agreement ("Agreement") is dated as of March 9, 2010 (the "Effective Date") by and between Skee-Ball, Inc. ("SB") located at 121 Liberty Lane Chalfont, PA and its representative Dimensional Branding Group, LLC, on the one hand, and Full Circle United, LLC ("the Company"), located at 141 Devoe Street Brooklyn, NY. For convenience SB and Company are sometimes referred to herein as the "Parties" and each a "Party." For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and for the mutual promises and agreements of the Parties herein contained, the Parties agree as follows:

1. SB and the Company are engaged in discussions relating to a prospective or current business relationship. During such discussions, SB and the Company may disclose to each other certain confidential trade and business information, and/or materials which the disclosing party ("Disclosing Party") considers proprietary. Neither Party is obligated by this Agreement to enter into any agreement or other arrangement with the other Party concerning the possible business relationship or otherwise.

2. The parties agree and acknowledge that as a result of any such disclosure, the receiving party ("Recipient") may have access to or have disclosed to it certain valuable information and materials of the Disclosing Party which are of a confidential nature whether in oral or visual form and regardless of whether or not identified as confidential concerning, without limitation, any or all of the following: any past, present or future information or materials concerning the pre-production, production, post-production and release schedules and techniques, marketing plans and techniques, and other information concerning any motion picture or other production or product; trade secrets; ideas, inventions, research and development; scripts, plots, characters, storyboards, artwork and other creative materials; client, customer, employee and supplier information; pricing; business plans; financial information; computer programs, mechanical and electronic hardware and other technology; dramatic, graphic, literary and musical material and sound recordings; any term or condition of any agreement between Disclosing Party and any individual or entity; any other information, the unauthorized disclosure of which could be detrimental to the interests of the Disclosing Party; and any derivatives of the foregoing (collectively, "Confidential Information"). For purposes of this Agreement Confidential Information includes information or materials of SB's parent, subsidiary, related and affiliated companies, divisions or entities.

3. Recipient further agrees, on behalf of itself and all Recipient employees, that, from and after the Effective Date and continuing for three (3) years thereafter, it: (a) shall regard and preserve as confidential all Confidential Information; (b) shall not use, copy, distribute, disclose or exploit, or authorize or permit the use, copy, distribution, disclosure or exploitation of, any Confidential Information in whole or in part in any manner or to any third party for any purpose except as otherwise expressly provided in this Agreement or authorized in writing in advance by an authorized representative of Disclosing Party and such third party has first, if requested by Disclosing Party, executed a written confidentiality agreement in form and substance acceptable to Disclosing Party; (c) shall use Confidential Information only to the extent necessary to evaluate the possibility of, or in furtherance of, the Parties' business relationship; (d) shall not modify, adapt, alter, translate, reverse engineer, disassemble, create derivative works of, or decompile any prototypes, software or other tangible objects that embody any Confidential Information; and (e) shall use its best efforts to prevent disclosure of the Confidential Information to any third party. Subject to Section 13, below, SB may disclose Confidential Information to employees, officers and/or directors of its parent, subsidiary or affiliated entities or divisions who have a need to know such information without notice to Disclosing

Party. Recipient shall immediately notify Disclosing Party in the event of any unauthorized use or disclosure of any Confidential Information. Immediately upon completion of Recipient's review of the Confidential Information, or upon the request of Disclosing Party, Recipient shall return all documents or other tangible objects containing or representing Confidential Information (and all copies thereof) to Disclosing Party, or, if requested by Disclosing Party, destroy all copies thereof and certify to Disclosing Party in writing that Recipient has done so.

4. Recipient shall have no obligation with respect to information disclosed by Disclosing Party to the extent that such information: (a) was or becomes publicly available or in the public domain through no action or inaction of Recipient, exclusive of information contained in patents pending or issued; (b) is in Recipient's possession free of any obligation of confidence to Disclosing Party at the time it was communicated to Recipient by the Disclosing Party, provided that such information was not communicated by Disclosing Party or its agents to Recipient prior to the execution of this Agreement or with duration of disclosures between the parties concerning their contemplated business relationship; (a) is rightfully communicated to Recipient free of any obligation of confidence subsequent to the time it was disclosed to Recipient by Disclosing Party; (d) is independently developed by Recipient without access to or reliance upon the Confidential Information and such independent development is supported by documentary evidence in existence at the time of such independent development; (e) is the minimum amount required to be publicly disclosed in order to comply with a valid order of a court of competent jurisdiction, provided Recipient gives Disclosing Party reasonable notice of such required disclosure, cooperates in any attempts by Disclosing Party to legally prevent or limit such disclosure, and complies with the terms of any protective order which is entered with regard to such disclosure; or (f) is disclosed by Recipient (subject to the terms of an appropriate protective order) in an action to enforce or defend its rights under this Agreement.

5.      Disclosing Party warrants, represents and acknowledges that it has the right to disclose the Confidential Information to Recipient and that any such disclosure does not violate the rights of any other person or party. Disclosing Party agrees to indemnify Recipient and hold it harmless from and against all loss, liability, damage and expense (including reasonable attorneys' fees) arising from any and all claims, demands, actions or suits resulting directly or indirectly from any use by Recipient of the Confidential Information in accordance with the terms of this Agreement.

6.  This Agreement shall govern all communications between Recipient and the Disclosing Party that are made during the period from the Effective Date of this Agreement to the date on which either Party receives from the other written notice that subsequent communications shall not be so governed; provided, however, that Recipient's obligations under Paragraphs 3 and 4 shall continue for a period of three (3) years from the date of termination or expiration of this Agreement, and further provided that Paragraphs 5 through 10, inclusive, shall continue in full force and effect notwithstanding the termination or expiration of this Agreement.

7. Neither Recipient nor any Recipient Employee shall issue or authorize, directly or indirectly, the dissemination of any publicity or other information regarding the existence of this Agreement or the relationship between Recipient and Disclosing Party, to any person or entity for any purpose whatsoever, without the prior written consent of Recipient.

8. As between the Parties, all right, title and interest in and to the Confidential Information will remain with the Disclosing Party. Recipient agrees that no license under any patent, copyright, trade secret or other intellectual property right is granted to or conferred upon Recipient in this Agreement or by the disclosure of any information or materials as contemplated hereunder, and that any such license must be express and in writing. Neither Party

03/12/2010 15:08 FAX 215 987 8982    SKEE BALL INC    ⬛004/005

............. ... ....    ᴰ ᵃᵃᵃ⁴ᵃᵃ⁴

shall acquire the right to use, nor shall either Party use, the names, characters, artwork, titles, designs, trade names, copyrighted materials, trademarks or service marks of the other Party, its related or subsidiary companies, or their respective employees, directors, shareholders, assigns, divisions successors or licensees in any advertising, publicity or promotion, or to express or to imply any endorsement by Disclosing Party of Recipient's products or services.

9. Any notice required to be given under this Agreement shall be deemed received five (5) days after mailing if sent by registered or certified mail to the address of the receiving Party set forth above (or to such other address as either of the parties shall have furnished to the other in writing) or by fax upon confirmation.

10. Each Party agrees that it shall limit access to the Confidential Information to the respective Party's employees having a strict need to know and shall advise such employees of their obligation of confidentiality as provided herein. Each Party shall require each such employee to retain in confidence the Confidential Information pursuant to a written non-disclosure agreement between the each Party and its respective employee that is no less protective of the Confidential Information than this Agreement.

11. It is understood that the Company and SB may each be in discussions with other parties regarding matters and possible business relationships which may be similar to those discussed pursuant to this Agreement. Nothing in this Agreement shall: (a) prohibit either Party from undertaking operations similar to those undertaken by the other Party or from discussing with third parties matters and possible business relationships which may be similar to those discussed pursuant to this Agreement, so long as such undertakings and discussions do not violate the terms hereof; or (b) obligate either Party to proceed with any transaction between them.

12. Nothing contained in this Agreement shall limit the terms and conditions of any other nondisclosure, confidentiality or other agreement by and between the Parties.

13. This *Agreement* will be governed by the laws of the State of New York, as applied to agreements made and performed entirely within New York. The Parties agree that any dispute arising under this Agreement will be resolved in the state or federal courts within the District of New York and each Party expressly consents to jurisdiction therein.

14. Neither Party may assign or delegate this Agreement (except to a parent, division, subsidiary or affiliated entity) without the prior written consent of the other Party. This Agreement is binding upon and inures to the benefit of the Parties hereto, and their affiliate and parent companies, divisions, successors and assigns. The failure of any Party to enforce any of the provisions of this Agreement shall not be construed to be a waiver of the right of such Party to enforce such provisions thereafter. This Agreement contains the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements, negotiations, understandings and communications regarding such subject matter. The Parties agree that no joint venture, partnership or other fiduciary relationship shall be deemed to exist or arise between them with respect to this Agreement or any possible business relationship. Each Party is an independent contractor and is not and shall not be deemed to be the legal representative or agent of the other Party for any purpose whatsoever, and neither Party is authorized by the other Party to transact business, incur obligations (either express or implied), bill goods, or otherwise act in any manner in the name or on behalf of the other Party, or to make any promise, warranty or representation in the name or on behalf of the other Party, except as expressly permitted in this Agreement. The language of this Agreement shall be construed simply and according to its fair meaning, and shall not be construed for or against any Party as a result of the source of draftsmanship. Should any provision of this Agreement be

determined to be void, invalid or otherwise unenforceable by any court or tribunal of competent jurisdiction, such determination shall not affect the remaining provisions hereof which will remain in full force and effect. No waiver or modification of any of the provisions of this Agreement shall be valid unless in writing and signed by both of the Parties. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which will constitute but one and the same instrument. This Agreement may be executed by facsimile, and any such facsimile copy of a Party's signature shall be treated for all purposes as an original.

SKEE-BALL, INC.

By: _____

Name: _____ Joseph W. Sladek

Title: _____ CEO

FULL CIRCLE UNITED, LLC

By: _____

Name: Eric Harris Pavony

Title: Owner

*Law Office of Jann Moorhead*
*43 La Crescenta Way*
*San Rafael, California 94901*

Telephone: (415) 785-7200
Fax: (415) 785-7220
E-Mail: jannmoorhead@comcast.net

<u>VIA ELECTRONIC MAIL (ericpavony@gmail.com)</u>

April 16, 2010

Re:   <u>UNAUTHORIZED USE OF SKEE-BALL® TRADEMARK</u>

Dear Mr. Pavony:

Our law firm represents Skee-Ball, Inc. ("Skee-Ball"), the exclusive owner of the Skee-ball®
trademark and name and related trade dress. The Skee-ball® trademark was registered May 21, 1929, and
was first used in commerce in 1908.

I understand that you have been in discussions with my client's agent regarding a possible business
relationship between your association and Skee-Ball. I further understand that you are preparing a business
proposal regarding use of the trademark that you intend to present to my client.

Nevertheless, your association, "brewskeeball", is using and exploiting the name and trademark
"skeeball" on your web site and in connection with events and activities conducted by you without
authorization. This is clearly an infringement of my clients' trademark in the name Skee-ball®
("Infringing Material"). You have used, and continue to use, my client's mark in association with
activities, products and services which are being commercially exploited without authorization from
Skee-Ball and without compensation to Skee-Ball.

Further, under U.S. Trademark law, Skee-ball® is widely recognized by the general consuming
public of the United States as a designation indicating a single source of goods or services. The
Skee-ball® name is both popular and famous and has been for many decades.

Under the four-prong test that the courts have developed to evaluate whether a mark is famous,
Skee-ball® meets all 4 prongs:

i.      The duration, extent, and geographic reach of advertising and publicity of the mark, whether
advertised or publicized by the owner or third parties.

ii.     The amount, volume, and geographic extent of sales of goods or services offered under the
mark. (i.e., the quantity and quality of sales of the goods covered by the mark.)

iii.    The extent of actual recognition of the mark.

Brewskee-ball.LLC ©CO 045510

iv.     Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register. (the mark has been registered since 1929, under the Act of 1905.)

You are hereby put on notice that your unauthorized use and exploitation of the Infringing Material is in violation of trademark, unfair competition and related laws.   In addition, your use and exploitation creates a likelihood of confusion since participants and consumers may erroneously believe that your association and its activities are licensed, sponsored or authorized by Skee-Ball, Inc. Further, your use and exploitation of of the Infringing Material constitutes a dilution and tarnishment of the famous Skee-ball® name and mark.

We demand that you:

(1)     Immediately and permanently discontinue the use of the Infringing Material in any and all ways being used by you and/or authorized by you;

(2)     Agree to make restitution in an amount to be mutually agreed upon after we have received the information to be provided by you pursuant to this letter;

(3)     Advise us in writing of your compliance with the foregoing and furnish us with the following information no later than the close of business on **Friday, April 23, 2010:**

(a)     The date you began to use the Infringing Material;

(b)     Identify the use of any other use of the Infringing Material by you and the first date of such use;

(c)     The total revenues that your association has derived to date;

(g)     The names and addresses of the owners of your association; the names and addresses of the officers, if any, of your association; and the names and addresses of any affiliated association, company or business.

Your conduct constitutes a serious violation of the trademark and other rights of Skee-Ball, Inc. and is very damaging to its business and reputation.

Nothing in this letter shall be construed as a waiver or relinquishment of any right or remedy possessed by Skee-Ball or any other affected party, all of which are expressly reserved.

Very truly yours,

Jann Moorhead, Esq.
LAW OFFICE OF JANN MOORHEAD

cc:   Mr. Joe Sladek
      Mr. John Leonhardt
      Mr. Larry Seldman

Brewskee-ball/C&D.041510

Exhibit C

*Law Office of Jann Moorhead*
*43 La Crescenta Way*
*San Rafael, California 94901*

Telephone: (415) 785-7200
Fax: (415) 785-7220
E-Mail: jannmoorhead@comcast.net

VIA ELECTRONIC MAIL (howardpavony@gmail.com)

July 6, 2011

Re:   **UNAUTHORIZED USE OF SKEE-BALL® TRADEMARK**

Dear Mr. Pavony:

As you know, our law firm represents Skee Ball, Inc. ("Skee-Ball").

Our client forwarded to me your recent e-mail response dated June 6, 2011. In addition, I have reviewed a screenshot from your web site in which you identify "brewskeeball" as "The First-Ever Competitive Skee-Ball League". This use of the trademark "SKEE-BALL®" and other uses by your association continue to be unauthorized and a violation of Skee Ball's exclusive ownership of this mark.

Per the forbearance agreement reached between your association and our client and evidenced in a letter dated September 2, 2010 from your previous attorney, Skee Ball agreed not to pursue the claims made against you per my letter to Eric Pavony dated April 16, 2010. The agreement stated that Skee Ball did not waive its rights and could continue to pursue any claims against you after the conclusion of the "Negotiation Period". The Negotiation Period ended on October 15, 2010, but as an accommodation to your association our client allowed this period to extend. Clearly these discussions have concluded with no agreement reached regarding the grant of a license to you regarding the authorized use of the mark "SKEE-BALL®. Therefore you must immediately cease and desist from any and all uses of that mark, including but not limited to the use on your web site mentioned above and any other uses that directly or indirectly imply that your association is affiliated with or authorized by Skee Ball, Inc.

Alternatively, our client is still willing to enter into a license agreement with your association regarding use of the mark on the terms previously offered to you, and reset out below:

- Licensor:      Skee Ball, Inc.
- Licensee:     Modern Mojo
- Fee:             $10,000 payable on execution.
- Term:          One year.
- Type:           Non-exclusive
- Rights:        Limited use of the SKEE-BALL® name, trademark, trade dress and equipment design in conjunction with the marketing and promotion of brewskeeball location based tournaments and leagues.

brewskee-ball.061611

- Restrictions
  - o Use of SKEE-BALL® name is a secondary restrictive use and not the primary title of any marketing or other use.
  - o No rights are granted to use SKEE-BALL® in connection with any retail or consumer product for sale or distribution.
  - o SKEE-BALL® will not be used in conjunction with the marketing or promotion of alcoholic beverages.
- Approvals:      All approval of use of the Property will be subject to the prior-written approval of Skee Ball, Inc. or its representatives. If use is approved for a particular case, If no elements have changed Licensee may continue use during term.
- Customary licensing agreement terms including representations and warranties, indemnification, etc.

Should you wish to accept these terms, then please let me know in writing no later than July 20, 2011 or the offer will be deemed withdrawn. We will then send you Skee Ball's customary license agreement. This agreement must be signed no later than July 20, 2011 or the offer will be deemed withdrawn.

If you choose not to comply with the above then Skee Ball has authorized this firm to take legal action to enforce its rights.

Nothing in this letter shall be construed as a waiver or relinquishment of any right or remedy possessed by Skee-Ball or any other affected party, all of which are expressly reserved.

Very truly yours,

Jann Moorhead, Esq.
LAW OFFICE OF JANN MOORHEAD

cc: Mr. Joe Sladek
    Mr. John Leonhardt
    Mr. Larry Seidman

Getwskee-ball.061411

# McLaughlin & Stern, LLP

260 MADISON AVENUE
NEW YORK, NEW YORK 10016
(212) 448-1100
FAX (212) 448-0066
www.mclaughlinstern.com

OLIVER R. CHERNIN
E-Mail: ochernin@mclaughlinstern.com

MILLBROOK NEW YORK

WEST PALM BEACH, FLORIDA

July 19, 2011

*BY REGULAR MAIL & FACSIMILE (415) 785-7220*
Jann Moorhead, Esq.
Law Offices of Jann Moorhead
43 La Crescenta Way
San Rafael, California 94901

Re:  Alleged Unauthorized Use of Skee-Ball Trademark
     Our File: 51341.000

Dear Ms. Moorhead:

This office represents Eric Pavony and Full Circle United LLC (hereinafter referred to as "Full Circle"), the owners of the registered Brewskee-Ball mark. As you and your client Skee Ball, Inc. know, Full Circle has used the mark Brewskee-Ball since at least as early as December 2005, in connection with skee-ball games including the arranging and conducting of skee-ball competitions, providing a website that provides statistics for skee-ball league players, and providing recognition and incentives by way of award to demonstrate excellence in the field of skee-ball. To confirm its rights in Brewskee-Ball, Full Circle has registered the mark as Registration No. 3,389,014 with the Patent and Trademark Office. A copy of the certificate of registration is attached hereto.

Full Circle has forwarded to us your letter dated July 6, 2011 for response. Your letter alleges that Full Circle's reference to the game skee-ball on its website infringes Skee Ball, Inc's alleged rights in the mark SKEE-BALL. We have carefully reviewed our clients' website and upon due consideration of your argument, we conclude that Skee-Ball, Inc.'s claim is without merit.

We acknowledge that our clients' website does refer to the game skee-ball by name, including references to a Skee-Ball league, a Skee-Ball championship, and the #1 Skee-Ball player. All of these usages are in a non-trademark sense in that Skee-Ball is merely used as the name of the game that is played at the Brewskee-Ball competitions. Full Circle's services, on the other hand, are prominently promoted using its registered Brewskee-Ball mark.

Full Circle's reference to the game skee-ball by name, clearly is legally permitted under the doctrine of fair use. This doctrine (generally referred to as "classic fair use") permits the use of another party's trademark to describe the goods or services of another party. 15 U.S.C. §1115(b)(4). Moreover, under the doctrine of nominative fair use, use of another party's

McLaughlin & Stern, LLP

trademark is permitted by another party, where the goods or services of the latter party are not readily identifiable without use of the trademark.

The use of Skee-Ball by Full Circle clearly comports with both of these branches of the fair use defense. As Brewskee-Ball is used as the name of a competitive league for skee-ball players, Full Circle's reference to the league as a skee-ball competition is classic fair use. Moreover, Full Circle's identification of Brewskee-Ball as a Skee-Ball league truthfully identifies the nature of the client's league in the only possible manner.

Moreover, Full Circle strives to avoid any confusion by the public by using the term skee-ball only as much as is absolutely necessary to inform the public that skee-ball is the game being played in the skee-ball league. Finally, Full Circle does not suggest, as your client contends, that the services rendered under its Brewskee-Ball mark are in any way endorsed or sponsored by Skee Ball, Inc., as evidenced by Full Circle's consistent use of its own name and mark Brewskee-Ball.

Case law permits the type of usage of another party's mark as is practiced by Full Circle. Thus, for example, a newspaper was permitted to use the name of a boy band to promote a contest to select the newest member of the band. *New Kids On The Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992).

The foregoing is not a complete recitation of rights of Full Circle, all of which are expressly reserved. Please direct all further communications in this matter to us.

Very truly yours,

Oliver R. Chernin

cc:   Full Circle United LLC
      Jack Becker, Esq.

Registered May 21, 1929.                    **Trade-Mark 256,496**

Renewed May 21, 1949, to Philadelphia Toboggan Company, of Philadelphia, Pa.

Republished, under the Act of 1946, July 12, 1949, by Philadelphia Toboggan Company, Philadelphia, Pa.

# UNITED STATES PATENT OFFICE.

NATIONAL SKEE-BALL COMPANY, INC., OF CONEY ISLAND, NEW YORK.

ACT OF FEBRUARY 20, 1905.

Application filed December 18, 1928.   Serial No. 276,901.

# SKEE·BALL

## STATEMENT.

*To all whom it may concern:*

Be it known that National Skee-Ball Company, Inc., a corporation duly organized under the laws of the State of New York, located at Coney Island, county of Kings, city and State of New York, doing business at Neptune Avenue and West 20th Street, Coney Island, N. Y., has adopted for its use the trade-mark shown in the accompanying drawing.

The trade mark has been continuously used in its business in interstate commerce since December 8th, 1908.

The particular description of goods to which the trade mark is appropriated is a GAME IN THE NATURE OF A BOWLING GAME AND PARTS THEREOF, comprised in Class 22, Games, toys, and sporting goods.

The trade mark is usually displayed by printing same on labels which are attached to packages containing the goods.

The word "Ball" is disclaimed apart from the mark shown in the drawing.

NATIONAL SKEE-BALL COMPANY, INC.,
By HERMAN BERGOFFEN,
*President.*

Int. Cl.: 28

Prior U.S. Cl.: 22

**United States Patent and Trademark Office**

10 Year Renewal

Reg. No. 256,496

Registered May 21, 1929

Renewal Approved Nov. 22, 1989

## TRADEMARK
## PRINCIPAL REGISTER

### SKEE-BALL

SKEE BALL, INC. (PENNSYLVANIA CORPORATION)
8TH AND MAPLE STS.
LANSDALE, PA 19446, ASSIGNEE BY MESNE ASSIGNMENT NATIONAL SKEE-BALL COMPANY, INC. (NEW YORK CORPORATION) CONEY ISLAND, NY

THE WORD "BALL" IS DISCLAIMED APART FROM THE MARK SHOWN IN THE DRAWING.

FOR: GAME IN THE NATURE OF A BOWLING GAME AND PARTS THERE-OF, IN CLASS 22 (INT. CL. 28).

FIRST USE 12-8-1908; IN COMMERCE 12-8-1908.

SER. NO. 71-276,901, FILED 12-18-1928.

*In testimony whereof I have hereunto set my hand and caused the seal of The Patent and Trademark Office to be affixed on Jan. 2, 1990.*

COMMISSIONER OF PATENTS AND TRADEMARKS

Int. Cl.: 41

Prior U.S. Cls.: 100, 101 and 107

**United States Patent and Trademark Office**

Reg. No. 3,389,014
Registered Feb. 26, 2008

SERVICE MARK
PRINCIPAL REGISTER

# Brewskee-Ball

PAVONY, ERIC HARRIS (UNITED STATES IN-
DIVIDUAL)
141 DEVOE STREET, SUITE 3
BROOKLYN, NY 11211

FOR: ENTERTAINMENT IN THE NATURE OF
SKEE-BALL GAMES; ENTERTAINMENT SERVI-
CES, NAMELY, ARRANGING AND CONDUCTING
OF SKEE-BALL COMPETITIONS; PROVIDING A
WEBSITE THAT PROVIDES STATISTICS FOR
SKEE-BALL LEAGUE PLAYERS; PROVIDING RE-
COGNITION AND INCENTIVES BY THE WAY OF
AWARDS TO DEMONSTRATE EXCELLENCE IN

THE FIELD OF SKEE-BALL, IN CLASS 41 (U.S. CLS.
100, 101 AND 107).

FIRST USE 12-12-2005; IN COMMERCE 12-12-2005.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

SER. NO. 78-932,776, FILED 7-19-2006.

SARA THOMAS, EXAMINING ATTORNEY

| Date: | 05/05/2010 |
|---|---|

**Total Attachments: 1**
source=brewskeeballtmassign#page1.tif

## ASSIGNMENT OF TRADEMARK

THIS ASSIGNMENT OF TRADEMARK ("Assignment"), is made by Eric Pavony (Assignor), a New York resident, for the benefit of Full Circle United LLC ("Assignee") a New York limited liability company with an address at 141 Devoe Street, Suite 3, Brooklyn, NY 11211.

WHEREAS, Assignor has adopted and used and is the owner of the trademark BREWSKEE-BALL which registered in the United States Patent and Trademark Office under registration number 3389014 on February 26, 2008, including all applications and registrations, thereto, all common law rights and all goodwill associated (the "Trademark");

WHEREAS, Assignor has agreed to assign, transfer and covey all right, title and interest in and to the Trademark to Assignee; and

WHEREAS, Assignee has agreed to acquire all of Assignor's right, title and interest in and to the Trademarks.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Assignor, intending to be legally bound, hereby agrees as follows:

1.      Assignor does hereby assign, transfer, convey and set over to Assignee, *nunc pro tunc* as of August 24, 2007, all of its full right, title and interest, including common law rights, in the United States of America in and to the Trademark, together with the goodwill of the business symbolized by said Trademark, any applications and registrations thereof, any renewal rights therein, any revival or reinstatement rights therein, and the exclusive right to enforce the Trademark in the United States in the sole name of Assignee, its successors, legal representatives and assigns; the aforesaid transferred rights, title and interests to be held and enjoyed by Assignee, its successors, legal representatives and assigns as fully and entirely as the same would have been held and enjoyed by Assignor had this assignment not been made.

2.      Assignor hereby agrees to execute, at Assignee's expense, all instruments, documents and papers and to perform such other proper acts as Assignee, its successors or assigns may deem reasonably necessary to secure to Assignee, its successors or assigns the rights hereby assigned.

3.      This Assignment shall be governed by, and construed in accordance with, the laws of the State of New York and the applicable federal laws of the United States of America.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed and delivered by its duly authorized officer as of the date first set forth above.

ERIC PAVONY

By: _____
Name: ERIC HARRIS PAVONY

ACCEPTED AND ACKNOWLEDGED BY:
FULL CIRCLE UNITED, LLC

By: _____
Name: EVAN TOBIAS
Title: Member

RECORDED: 05/05/2010

**TRADEMARK
REEL: 004199 FRAME: 0662**