UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FULL CIRCLE UNITED, LLC, a New York limited liability company, | ) ) ) | Civil Action No.: CV11-5476 (DLI) (LB) |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Hon. Judge Dora L. Irizarry, Presiding Magistrate Judge Lois Bloom |
| SKEE-BALL, INC., a Pennsylvania corporation, | ) ) ) | Date of Service: February 3, 2012 |
| Defendant. | ) ) ) ) | |

**PLAINTIFF FULL CIRCLE UNITED, LLC'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR STAY AND FOR A MORE DEFINITE STATEMENT**

TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................3

      A.    Factual Background .................................................................................3

      B.    Procedural Background...........................................................................5

III.  FULL CIRCLE IS WILLING TO DISMISS COUNTS II & III IN FAVOR OF ITS
      COUNTERCLAIMS IN THE RELATED CASE.......................................................6

IV.   THE REMAINING COUNTS APPROPRIATELY APPEAR IN FULL CIRCLE'S
      COMPLAINT AND SHOULD NOT BE DISMISSED. ...................................................7

V.    DEFENDANT SBI'S RULE 12(B)(6) MOTION AS TO COUNTS V, VI AND VII IS
      UNFOUNDED AND SHOULD BE DENIED. ..........................................................10

      A.    Legal Standards.....................................................................................10

      B.    SBI's Motion Under Rule 12(b)(6) and Rule 12(e) Does Not Apply to Counts
            I, II or III of Full Circle's Complaint.................................................11

      C.    Full Circle's Breach of Contract Claim (Count IV) is Pled Properly. ...................11

            i.    SBI Properly Pled Breach of the 2005 Agreement. ...................................11

            ii.   SBI's Remaining Rule 12(b)(6) Argument Regarding Full Circle's
                  Breach of Contract Claim Fails...............................................14

            iii.  The Court Should Deny SBI's FRCP 12(e) Motion for More Definite
                  Statement Regarding Full Circle's Claim for Breach of Contract. ...........16

      D.    Full Circle's Claim for Breach of the Covenant of Good Faith and Fair
            Dealing (Count V) is Pled Properly. ......................................................16

      E.    Full Circle's Unfair Competition Claim (Count VI) is Pled Properly. ...................19

      F.    Full Circle's Sherman Act Violation Claim (Count VII) is Pled Properly. ............20

            i.    Full Circle's Complaint Sufficiently Pleads Facts Regarding Market
                  Power. ..............................................................................21

            ii.   Full Circle's Complaint Sufficiently Pleads Facts Regarding
                  Anticompetitive Behavior. ...................................................23

            iii.  Full Circle's Complaint Sufficiently Pleads Facts Regarding Damage
                  From the Anticompetitive Behavior. ........................................23

iv.    SBI's Rule 12(e) Motion to Dismiss the Sherman Act Count is Unfounded.................................................................................24

VI.    THERE IS NO REASON TO STAY FULL CIRCLE'S COMPLAINT. .........................25

VII.   CONCLUSION ........................................................................................................25

ii

TABLE OF AUTHORITIES

PAGE

**Cases**

*511 W. 232nd Owners Corp. v. Jennifer Realty Co.*
    98 N.Y.2d 144 (N.Y. 2002) ................................................................................16, 17, 18

*Aequitron Med. v. Dyro*
    999 F. Supp. 294 (E.D.N.Y. 1998) ..............................................................................15

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ....................................................................................................10

*Bower v. Weisman*
    639 F.Supp. 532 (S.D.N.Y.1986) ................................................................................11

*Burke v. Bevona*
    866 F.2d 532 (2d Cir. 1989) ........................................................................................14

*Chase Manhattan N.A. v. Keystone Distribs., Inc.*
    873 F. Supp. 808 (S.D.N.Y. 1994) ..............................................................................18

*Cron v. Hargro Fabrics, Inc.*
    91 N.Y.2d 362 (N.Y. 1998) ..........................................................................................13

*Dalton v Educational Testing Serv.*
    87 N.Y.2d 384 (N.Y. 1995) ..........................................................................................16

*DiFolco v. MSNBC Cable L.L.C.*
    2007 U.S. Dist. LEXIS 23440, *12 (S.D.N.Y. Mar. 29, 2007)....................................18

*Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO*
    1994 U.S. Dist. LEXIS 12245, 1994 WL 478495, at *1 (S.D.N.Y. Sept. 1, 1994) .................11

*Erickson v. Pardus*
    551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) ........................................10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*
    375 F.3d 168 (2d Cir. 2004) ........................................................................................11

*Friedman v. Wahrsager*
    2012 U.S. Dist. LEXIS 10994 (E.D.N.Y. Jan. 30, 2012) ............................................20

*Green v. McClendon*
    2010 U.S. Dist. LEXIS 93804 (S.D.N.Y. Sept. 8, 2010) ............................................13

*Haag v. City of Syracuse*
    2011 U.S. Dist. LEXIS 88058, 5-6 (N.D.N.Y Aug. 9, 2011)........................................10

*Hammes v. AAMCO Transmissions*, 33 F.3d 774, 778 (7th Cir. 1994) ............................21

*Harris v. Provident Life and Acc. Ins. Co.*
    310 F.3d 73 (2d Cir. 2002) ..........................................................................................18

*Harsco Corp. v. Segui*
    91 F.3d 337 (2d Cir. 1996) ................................................................................12, 15, 16

*Hayden Publ'g Co. v. Cox Broad. Corp.,* 730 F.2d 64, 70 n.8 (2d Cir. 1984)........................21, 22

*Herzfeld & Stern v. Beck*
    175 A.D.2d 689 (N.Y. App. Div. 1st Dep't 1991) ........................................................15

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*
    2005 U.S. Dist. LEXIS 12400, 2005 WL 1500893, *2 (S.D.N.Y. Jun. 24, 2005)...................11

*Litwin v. Blackstone Group, L.P.*
    634 F.3d 706 (2d Cir. 2011) ........................................................................................10

*Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* 354 F. Supp. 2d 293, 307 (S.D.N.Y. 2004)
    ....................................................................................................................................24

*Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*
   244 F.R.D. 204, 218 & n. 11 (S.D.N.Y. 2007) ........................................................14
*Maxwell v. New York Univ.*
   2008 U.S. Dist. LEXIS 105211 (S.D.N.Y. Dec. 31, 2008) ...............................11, 16
*Miller v. Wolpoff & Abramson, L.L.P.*
   321 F.3d 292 (2d Cir. 2003) .................................................................................10
*Milton Abeles, Inc. v. Creekstone Farms Premium Beef*
   *LLC*, 2006 U.S. Dist. LEXIS 96089, 18-19 (E.D.N.Y. May 14, 2006) ...................13
*Nasalok Coating Corp. v. Nylok Corp.*
   522 F.3d 1320 (Fed. Cir. 2008) .........................................................................7, 9
*Nichols v. Mahoney,* 608 F. Supp. 2d 526, 544 (S.D.N.Y. 2009) ...............................24
*North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*
   22 N.Y.2d 171, 239 N.E. 2d 189 (N.Y. 1968)......................................................14
*Roth v. Jennings*
   489 F.3d 499 (2d Cir. 2007) .................................................................................10
*Rowe v Great Atl. & Pac. Tea Co.*
   46 N.Y.2d 62 (N.Y. 1978) ....................................................................................17
*Roy Export Co. Establishment v. CBS, Inc.*
   672 F.2d 1095 (2d Cir. 1982) ...............................................................................20
*SSP Capital, LLC v. Mandala, LLC*
   715 F. Supp. 2d 443 (S.D.N.Y. 2009) .................................................................13
*Tagare v. NYNEX Network Systems Co.*
   921 F.Supp. 1146 (S.D.N.Y. 1996) ...............................................................passim
*Telecom Int'l Am., Ltd. v. AT&T Corp.*
   280 F.3d 175 (2d Cir. 2001) .................................................................................19
*Telecom Int'l Am., Ltd. v. AT&T Corp.*
   67 F. Supp. 2d 189 (S.D.N.Y. 1999) ...................................................................19
*Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001)....................................21
*United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389 (1956)..............23
*Weisse v. Engelhard Minerals & Chem. Corp.*
   571 F.2d 117 (2d Cir. 1978) .................................................................................14
*Wells Fargo Bank Northwest, N.A. v. Sundowner Alexandria, LLC*
   2010 U.S. Dist. LEXIS 83641 (S.D.N.Y. Aug. 16, 2010)......................................18

**Statutes**
15 U.S.C. § 45 .............................................................................................................20

**Rules**
Fed. R. Civ. P., Rule 8(a) ............................................................................................10
Fed. Rule Civ. P., Rule 12(e).................................................................................10, 16

## I.    INTRODUCTION



"Skee-ball" is the name of a type of game played on a machine by rolling balls on a ramp trying to have them land in holes with different point values.   There is no other term the public associates with that type of game, and no one can legally assert trademark rights in the name of a type of game (such as baseball or pinball).   Traditionally, the game has been played by children in arcades.   Plaintiff Full Circle United, LLC ("Full Circle") creatively has expanded the market for the game by running a league for adults, in bars, calling the league Brewskee-Ball®.   Defendant Skee-ball, Inc. ("SBI") has long known about Full Circle's league, and SBI agreed that it would support Full Circle's efforts.

SBI has entered at least two different agreements with Full Circle since 2005 which, since 2011, it subsequently breached.   SBI has acted in bad faith in negotiating and performing the agreements, it has performed acts against Full Circle constituting unfair competition, and it has threatened Full Circle and improperly wielded its purported trademark, which does not cover Full Circle's activities, in an illegal, anticompetitive manner to keep Full Circle from conducting its business.   Full Circle's Complaint appropriately pleads claims for relief regarding these wrongful acts, and SBI's motion to dismiss should be denied as to these claims.

SBI also filed its own complaint for trademark infringement against Full Circle (Civil Action No. CV11-6277-DLI-LB), which now has been assigned to this Court and is awaiting consolidation with Full Circle's Complaint.   SBI's complaint has no bearing on Full Circle's breach of contract, breach of the covenant of good faith and fair dealing, unfair competition or Sherman Act claims.   SBI's complaint never mentions any agreement, and does not allege any breach by Full Circle. The two sets of claims arise from different operative facts.

Full Circle's Complaint also includes a count to cancel SBI's trademark registration for "skee-ball," a legal claim the Federal Circuit has specifically held is distinct from a trademark infringement claim and is not a compulsory counterclaim to trademark infringement.  It also should not be dismissed.

Full Circle is willing to dismiss the two remaining claims (Counts II and III) in favor of its counterclaims to SBI's complaint.  However, in this case that distinction is really nothing more than academic, given that both cases are now before the same Judge and presumably will be consolidated (both parties agree the cases are related and filed a notice to that effect).  Thus, whether in Full Circle's Complaint or as a counterclaim to SBI's complaint, the claims are proper and should be heard in the same consolidated case.  At least with respect to Counts I, II, and III, SBI concedes as much, as it did not move for dismissal of these counts on any other ground than that they should be counterclaims.

In an exercise of form over substance, SBI also argues that the claims in this Complaint generally were re-pled as counterclaims to SBI's complaint.  That is true, but it only happened because SBI refused to permit the extension of time requested by Full Circle to respond to its complaint.  Full Circle agrees that there is no need for overlapping claims, but that does not warrant dismissal of this Complaint.  Full Circle gave SBI a 49-day extension to respond to its Complaint, but when it came time for Full Circle to respond to SBI's complaint, SBI only agreed to an 11-day extension, so that Full Circle had to file its response before the two related cases were consolidated.  Full Circle agrees that there need not be overlapping claims – it only filed certain claims as counterclaims because the two overlapping cases had not yet been assigned to the same Judge (they have now) and had not yet been consolidated.  Full Circle wants to pursue the claims in its Complaint and is willing to dismiss any overlapping counterclaims from the

2

other case when the two lawsuits are consolidated and the Court confirms the viability of the claims in Full Circle's Complaint.  To the extent any claim is deemed to be a compulsory counterclaim to SBI's complaint (*i.e.,* Counts II and III of Full Circle's Complaint), Full Circle is willing to dismiss it from this action.  As a result, there will be no overlap.

In addition to SBI's procedural argument, SBI also moves to dismiss or for a more definite statement as to certain claims in the complaint.  In the alternative, SBI moves to stay this case pending the outcome of its own complaint.  SBI is not entitled to any of this relief.  The complaint properly pleads facts sufficient to put SBI on notice of legally cognizable claims made by Full Circle.  SBI's motion should be denied.

## II.   BACKGROUND

### A.   Factual Background

Skee-ball is a type of arcade game with a flat surface bounded on two sides, leading to a ramp.  Beyond the ramp are holes associated with point values.  A player rolls a ball toward the ramp in an attempt to cause the ball to become airborne and land in one of the holes. According to SBI, the skee-ball game has been in existence for more than 100 years.  (*See* Exhibit 1 to the Declaration of Robert Harkins [hereinafter "Harkins Decl."], statement of SBI CEO Joseph Sladek from SBI's website.)  Different companies manufactured skee-ball machines over the years and continue to manufacture them, including SBI, the defendant in this action. (*See, e.g.,* Harkins Decl., Ex. 2.) Traditionally, skee-ball has been considered a game played by children, particularly because skee-ball machines in arcades reward the user with paper tickets that arcades allow players to trade for toys appealing to children. (*See* Harkins Decl., Ex. 3.)

In 2005, two young entrepreneurs, Eric Pavony and Evan Tobias, had an idea.  They thought they could introduce skee-ball into an adult setting, specifically bars, and make the game

more fun for adults by employing a league-play format. (*See* Declaration of Eric Pavony [hereinafter "Pavony Decl."], ¶ 2 [attached as Ex. 4 to Harkins Decl].)  They took their idea to SBI and had a meeting with Joseph Sladek, SBI's CEO, at his office in Pennsylvania.  (Pavony Decl., ¶ 3.) During the meeting, Messrs. Pavony and Tobias told Mr. Sladek their idea. (*Id.*)  He told them that SBI was a manufacturer and was not in the business of skee-ball leagues, but told them SBI had no problem with them pursuing their Brewskee-Ball league. (*Id.*)  On the contrary, SBI agreed to provide Full Circle with preferred direct customer pricing for Full Circle to buy its machines to carry out its plans.

Based on SBI's representations and agreement, Full Circle pursued its Brewskee-Ball league and obtained a federal trademark for Brewskee-Ball® to avoid confusion with imitators forming their own skee-ball leagues. (*Id.,* ¶ 4; *see also* Complaint, Ex. 6.)  Full Circle has only used machines manufactured by SBI.  (Pavony Decl., ¶ 4.)

Due in large measure to Full Circle's efforts, skee-ball became more popular as a sport and source of entertainment for adults.  SBI contacted Full Circle to discuss benefits of the two companies working together. (Pavony Decl., ¶ 5.)  The parties entered a confidentiality agreement so that Full Circle could be protected when it divulged its plans to SBI to see if they could work together.  The written agreement was executed by both sides and was effective as of March 9, 2010. (*See* Pavony Decl., ¶ 6 & Ex. 1 to Pavony Decl.)  The agreement has a venue provision that states that relevant disputes between the companies must be litigated in New York. (*See id.*)

According to the terms of that agreement, Full Circle provided confidential information, only to then be hit with a cease and desist letter from counsel for SBI dated April 16, 2010. (Complaint, ¶ 17 & Ex. 2.)  The letter itself refers to the confidential discussions.  (*Id.*)

4

Subsequently, a representative of SBI told Full Circle it could disregard the letter.  However, a year later, counsel for SBI sent a second cease and desist letter dated July 6, 2011. (Complaint, ¶ 18 & Ex. 3.)  Counsel for Full Circle responded to the letter. (Complaint, ¶ 19 & Ex. 4.)

SBI did not end up working with Full Circle.  Instead, after receiving Full Circle's confidential business information, SBI threatened and ultimately filed suit against Full Circle for trademark infringement and to cancel Full Circle's trademark, undermining the agreements the parties had reached and damaging Full Circle. (*See* Complaint, ¶¶ 16-61.)

### B.     Procedural Background

On October 5, 2011, SBI filed suit against Full Circle, not in New York, where Full Circle is located, nor in Pennsylvania, where SBI is located, but in San Francisco, all the way across the country from both companies. It became clear to Full Circle that SBI obtained Full Circle's confidential information, and contrary to its good faith obligations and the terms of the contract, used the information to interfere with Full Circle's business and obtain the benefit of Full Circle's plans exclusively for itself.  This was all the more galling because SBI based its suit on the idea that SBI owned the name "skee-ball," which for many decades has been the generic name for the skee-ball game.  In arcades, one finds videogames, pinball games, skee-ball games, and air hockey games.  To the extent SBI previously obtained a trademark for the term "skee-ball" in the 1920s, the name long ago became generic and unenforceable.  The Patent and Trademark Office itself recognized this fact when it **required** Full Circle to describe its BREWSKEE-BALL® trademark as related to the category of games known as skee-ball games. (*See* Harkins Decl., Exh. 5.)  SBI's lawsuit, asserting an invalid trademark in a forum selected across the country from both parties and seeking to cancel Full Circle's legitimate trademark,

was merely an attempt by a bigger company to employ improper tactics, including forum shopping, to intimidate a smaller company.

On November 8, 2011, Full Circle filed the current Complaint, including a count for breach of contract.  The complaint was filed in New York as required by the agreement.

On November 9, 2011, Full Circle moved to dismiss SBI's California complaint for lack of jurisdiction and improper venue.  SBI asked Full Circle for a 49-day extension to ensure that the motion had been ruled upon before it had to file its response, and Full Circle agreed. Magistrate Judge La Porte in the Northern District of California agreed that the venue was improper, but in her discretion, the complaint was transferred rather than dismissed to save SBI from having to re-file its claims.  The parties agreed that the cases are related and should be consolidated, and they filed a notice of related cases.

After the transfer, the case was originally assigned to Judge Nicholas G. Garaufis and Magistrate Judge James Orenstein.  Full Circle requested an extension to respond to SBI's complaint to allow for the consolidation to occur so that there would not be overlapping claims between the two cases.  SBI would only agree to an 11-day extension, which was not enough time for the Court to assign both complaints to the same judge and for the cases to be consolidated.  Since that time, both complaints have been assigned to the same judge, and presumably they will be consolidated, so it is substantively immaterial which case Full Circle's claims are in.  Nevertheless, SBI filed the current 25-page motion, in large part to request dismissal of claims in Full Circle's Complaint in favor of its counterclaims.

## III.    FULL CIRCLE IS WILLING TO DISMISS COUNTS II & III IN FAVOR OF ITS COUNTERCLAIMS IN THE RELATED CASE.

Full Circle agrees to dismiss Counts II and III of its complaint in favor of the identical claims asserted as compulsory counterclaims in the complaint filed by SBI.

6

## IV.    THE REMAINING COUNTS APPROPRIATELY APPEAR IN FULL CIRCLE'S COMPLAINT AND SHOULD NOT BE DISMISSED.

The remaining five counts of Full Circle's complaint are not compulsory counterclaims to SBI's complaint and not subject to dismissal:

Count I – Cancelation of "Skee-Ball" Trademark.  This is not a compulsory counterclaim.  The Federal Circuit Court of Appeals has ruled directly on this point of law, finding that a claim to cancel a trademark is distinct from a trademark infringement claim regarding the same trademark and is not a compulsory counterclaim to an infringement claim.  *See Nasalok Coating Corp. v. Nylok Corp.,* 522 F.3d 1320, 1325-27 (Fed. Cir. 2008).[1]  The court found that, although invalidity of a mark may be raised as a counterclaim, it need not be, and invalidity of a mark may also be raised in a separate complaint. *Id.* at 1326.  Here, unlike in *Nasalok,* there is no substantive legal issue at stake, because the two complaints are being consolidated and will be heard at the same time in any event.  However, because Full Circle filed its cancelation claim first in this Complaint, it opts to pursue the claim in its Complaint and is willing to voluntarily dismiss it from its counterclaims to SBI's complaint.

Count IV – Breach of Contract.  SBI's complaint never makes any allegations regarding the contract between SBI and Full Circle which Full Circle alleges has been breached by SBI, so this claim does not "arise out of the same transaction or occurrence" as required by Rule 13(a) of the Federal Rules of Civil Procedure for it to be a compulsory counterclaim.  SBI and Full Circle had two agreements, both of which SBI breached.  SBI breached a 2005 Agreement and a 2010

---

[1] SBI cites *J. Lyons & Co. v. Republic of Tea*, 892 F. Supp. 486 (S.D.N.Y. 1995) as support for its argument that a claim for invalidity is compulsory to an infringement claim.  However, the *J. Lyons* decision does not so hold.  Instead, that case dealt with a different set of claims.  The court in that case held that, when a party filed a declaratory judgment claim for non-infringement of a trademark, a claim for infringement of the trademark was a compulsory counterclaim.  Those facts are distinguishable from the current case, which does not involve two infringement claims, but instead one claim for infringement and a different claim for invalidity.  In contrast to the *J. Lyons* decision, the Federal Circuit's decision in *Nasalok* is on point, holding that a claim for trademark infringement involves different operational facts from a claim to invalidate the trademark registration.

Agreement with Full Circle.  SBI breached the agreements in multiple ways, one of which was by filing suit against Full Circle, but none of those facts are recited in or form a basis for SBI's complaint and, therefore, is not part of the same transaction or occurrence as that complaint.  SBI also has been improperly using the information to Full Circle's detriment, which is also not part of SBI's complaint.

The breach of contract allegations set forth distinct facts from the facts in SBI's complaint for trademark infringement and for cancelation of Full Circle's registration in the mark Brewskee-Ball®.  The allegations in SBI's complaint do not arise from dealings between the parties, but the allegation that Full Circle has used the phrase "skee-ball" and the fact that Full Circle has obtained a trademark registration from the U.S. Patent and Trademark Office for Brewskee-Ball®.  Therefore, the breach of contract claim was properly raised in a separate complaint and is not compulsory to SBI's claims.

Count V – Breach of the Covenant of Good Faith and Fair Dealing.  This claim stems from conduct surrounding the 2005 and 2010 Agreements, alleging further that SBI's actions and performance regarding the agreements were in bad faith and deprived Full Circle of the benefits of those agreements.  It is not a compulsory counterclaim to SBI's complaint, because the allegations relate to conduct between the parties and the parties' obligations to deal fairly with each other, not the facts of use of the term "skee-ball" or the trademark Brewskee-Ball®.  Thus, it is not a compulsory counterclaim to SBI's complaint.

Count VI – Unfair Competition.  The facts alleged in this count relate to similar facts as those discussed regarding the counts for breach of contract and breach of the covenant of good faith and fair dealing, and not the same as the trademark infringement issue, and thus the claims belong in the same Complaint and is not compulsory to SBI's complaint.

8

Count VII – Sherman Act Violation. The Sherman Act violation count relates to SBI's improper threats and actions regarding the name "skee-ball" to improperly maintain a monopoly on games and leagues that play skee-ball.   By the same reasoning set forth in *Nasalok*, the allegations do not arise from the same transaction or occurrence set out in SBI's complaint. SBI's complaint only alleges that SBI is the owner of a trademark and that Full Circle is purportedly infringing that trademark by using the term "skee-ball" as well as by maintaining a registration for the mark Brewskee-Ball®.  The Sherman Act violation claim alleges that SBI is improperly wielding its purported trademark to keep others from competing in the industry. Thus, the Sherman Act allegations are not allegations regarding non-infringement (which are covered by Counts II and III and admittedly compulsory counterclaims), but instead relate to SBI's own conduct, which is not part of SBI's complaint.  Thus, all of these claims are properly part of Full Circle's complaint and are not subject to dismissal as compulsory counterclaims.

SBI has noted that, after filing these claims in the instant complaint, Full Circle later filed them as counterclaims to SBI's complaint.  That is true, and Full Circle is willing to dismiss those counterclaims upon confirmation by the Court that they will not be dismissed from Full Circle's Complaint.  Full Circle believes this overlap could easily have been avoided had SBI granted the extension Full Circle requested to allow the cases to be consolidated first.  Because SBI refused, apparently in order to force Full Circle to file a response before SBI's response was due (even though that date was the result of Full Circle's professional courtesy to SBI granting it a 49-day extension), there are currently overlapping claims.  However, Full Circle opts to keep the remaining claims in its Complaint, in part because Full Circle is concerned that in further tactical maneuvering, SBI will wait until its answer to the counterclaims is due and then simply file a motion to dismiss those, too, thereby needlessly delaying the progress of the case.

9

## V.  DEFENDANT SBI'S RULE 12(B)(6) MOTION AS TO COUNTS V, VI AND VII IS UNFOUNDED AND SHOULD BE DENIED.

### A.  Legal Standards

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" in addition to a short and plain statement establishing jurisdiction and a demand for relief. Fed. R. Civ. P., Rule 8(a).  Federal courts follow a notice pleading requirement and do not require that a complaint provide a detailed factual statement.  Rather, a complaint only must allege facts sufficient to put the defendant on notice as to the claims and facts being asserted.  *See Haag v. City of Syracuse,* 10-CV-00077, 2011 U.S. Dist. LEXIS 88058, 5-6 (N.D.N.Y Aug. 9, 2011).  "[T]he Supreme Court has reiterated that the liberal notice pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require specific facts be alleged, but only that the defendant be given 'fair notice of what the . . . claim is and the grounds upon which it rests.' *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)."  *Id. (also citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

"When deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the factual allegations in the complaint as true and draw all inferences in favor of the plaintiff." *Id.,* at 1 (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). *See also Litwin v. Blackstone Group, L.P.*, 634 F.3d 706, 715 (2d Cir. 2011). "The court is generally 'required to look only to the allegations on the face of the complaint.'" *Erickson,* at 2. (*quoting Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

A motion for more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure is not simply a means for a party to request additional details in a complaint.  Instead, the party demonstrate that the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. Rule Civ. P., Rule 12(e).  "[A] motion pursuant to Rule

12(e) should not be granted 'unless the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it.'" *Tagare v. NYNEX Network Systems Co*., 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996) (*quoting Bower v. Weisman*, 639 F. Supp. 532, 538 (S.D.N.Y.1986)). "The Rule 'is designed to remedy unintelligible pleadings, not to correct for lack of detail.'" *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 2005 WL 1500893, *2 (S.D.N.Y. Jun. 24, 2005) (*quoting Dunlop-McCullen v. Local 1-S RWDSU-AFL-CIO*, 1994 WL 478495, at *1 (S.D.N.Y. Sept. 1, 1994). *Maxwell v. New York Univ.*, 2008 WL 5435327 (S.D.N.Y. Dec. 31, 2008).

**B.     SBI's Motion Under Rule 12(b)(6) and Rule 12(e) Does Not Apply to Counts I, II or III of Full Circle's Complaint.**

SBI's motion to dismiss under Rule 12(b)(6) and alternatively under Rule 12(e) does not include Counts I, II, or III of Full Circle's complaint.  Since Count I properly remains in the Complaint, so there is no basis upon which to dismiss the entire Complaint.

**C.     Full Circle's Breach of Contract Claim (Count IV) is Pled Properly.**

Count IV of the Complaint asserts breach of contract, speaking to two agreements entered between SBI and Full Circle.  The claim is appropriately pled and should not be dismissed.

***i.     SBI Properly Pled Breach of the 2005 Agreement.***

SBI first moves to dismiss the claim as to the 2005 Agreement.  SBI notes several detailed factual allegations regarding material terms of this agreement, and then, strangely, asserts that the material terms are not set forth in the complaint.

"To make out a viable claim for breach of contract, a 'complaint need only allege (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 177 (2d Cir. 2004) (*quoting Harsco Corp. v. Segui*, 91 F.3d 337,

348 (2d Cir. 1996)).  Here, those allegations have been made, and made in reasonable detail.  Paragraphs 11, 12, and 42 of the Complaint, for example, set forth: (1) who entered the 2005 Agreement (Joe Sladek, CEO of SBI, and Eric Pavony and Evan Tobias, owners of Full Circle), (2) when it was entered (2005), (3) how it was entered (verbally, in person in a meeting at SBI), and (4) the specific exchange of consideration – Full Circle would promote and market skee-ball without payment from SBI, which would benefit SBI as a manufacturer of skee-ball machines, and SBI would allow and not interfere with Full Circle in its promotion of its skee-ball league and its use of "Brewskee-Ball."  SBI also agreed to give Full Circle preferential direct sale pricing to support Full Circle's efforts.  The Complaint alleges that Full Circle adequately performed the 2005 Agreement (Complaint, ¶ 44); that SBI breached it (Complaint, ¶ 45); and that Full Circle was damaged as a result (Complaint, ¶¶ 46-47).  Thus, the Complaint properly sets out a breach of contract claim regarding the 2005 Agreement.  SBI argues that a license agreement would typically set out certain particular terms, but SBI cites no law that states that parties cannot enter into an agreement where they exchange non-monetary consideration that includes permitted use of a trademark in exchange for marketing efforts.

Next, SBI incorrectly argues that breach of the 2005 Agreement was superseded by the 2010 Agreement.  SBI's argument here is very misleading, selectively quoting from one part of the agreement, while omitting a provision that expressly states that the 2010 Agreement does **not** supersede other agreements between the parties:

> **Nothing contained in this Agreement shall limit the terms and conditions of any other nondisclosure, confidentiality or other agreement by and between the Parties.**

(Compl., Ex. A, ¶ 12 [emphasis added].)

Additionally, the 2010 Agreement is a simple confidentiality agreement and not a licensing (or non-licensing) agreement (the agreement is entitled "Confidentiality Agreement").

12

In context, it is clear that the agreement stated only that no intellectual property was being conferred ***by the agreement itself*** or by disclosure of confidential information, and for any such additional rights to be granted if discussed pursuant to the 2010 Agreement, such a grant would need to be in writing and not rely upon the 2010 Agreement or exchanged information to assert that a license had issued. (Compl., Ex. A, ¶ 8.)  Thus, the 2005 Agreement was not superseded and can serve as the basis for a claim for relief as set forth in the Complaint.

SBI also asserts a statute of frauds defense to the 2005 Agreement.  That is also incorrect. First, as alleged in the Complaint, Full Circle performed its obligations under the 2005 Agreement.  SBI received the benefit of this performance and, in turn, knowing that Full Circle was promoting skee-ball with its Brewskee-Ball league, SBI did not interfere.  The full or part performance of an oral agreement takes the agreement outside the statute of frauds.  "[I]t is well established that part performance is an accepted rejoinder to a statute of frauds defense." *SSP Capital, LLC v. Mandala, LLC*, 715 F. Supp. 2d 443, 448 (S.D.N.Y. 2009).  *See also Green v. McClendon*, 2010 WL 3563348 (S.D.N.Y. Sept. 8, 2010) (part performance takes a contract out of the statute of frauds).

Additionally, the statute of frauds bar regarding contracts that cannot be performed within one year "encompasses '**only** those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year.'" *Milton Abeles, Inc. v. Creekstone Farms Premium Beef, LLC*, 2007 WL 1434990, 18-19 (E.D.N.Y. May 14, 2007) (*quoting Cron v. Hargro Fabrics, Inc.,* 91 N.Y.2d 362 (N.Y. 1998)) (emphasis added).  A contract of indefinite duration does not mean that the contract cannot be performed in a year. *See id.*  "The practice of the New York courts has been to construe this one-year provision of the statute narrowly to give effect to oral contracts which are capable of being performed within one

year. Thus, the one-year provision has been held to bar enforcement of oral contracts only in those cases where the contract is 'by express stipulation not to be performed within a year' and not to cases 'in which the performance of the agreement depends upon a contingency which may or may not happen within the year.'" *Weisse v. Engelhard Minerals & Chem. Corp.*, 571 F.2d 117, 119 (2d Cir. 1978) (*quoting North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 239 N.E. 2d 189, 191 (N.Y. 1968)).

Here, there was no express stipulation not to perform the contract in a year.  It was an open-ended arrangement.  If one party wanted to conclude the agreement in a year, it could have done so.  SBI's cited opinions do not provide contrary authority.  Instead, they simply hold that if the only way for an oral agreement to be complete in a year is for one party to breach the agreement, that is insufficient to remove the oral agreement from the statute of frauds.  *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.,* 244 F.R.D. 204, 218 & n.11 (S.D.N.Y. 2007) (oral agreement of indefinite duration falls within the statute of limitations when the **only** way to end it is by breach); *Burke v. Bevona*, 866 F.2d 532, 537 (2d Cir. 1989) (same).  Thus, the statue of frauds does not apply to the 2005 Agreement.

### ii.   *SBI's Remaining Rule 12(b)(6) Argument Regarding Full Circle's Breach of Contract Claim Fails.*

Next, SBI incorrectly asserts that the Complaint fails to sufficiently identify a breach of contract under the 2005 Agreement or 2010 Agreement.   As discussed above, the 2005 Agreement was breached when, after Full Circle successfully marketed skee-ball, SBI failed to meet its obligations of noninterference with Full Circle's skee-ball marketing campaign and Brewskee-Ball® league, sending Full Circle cease-and-desist letters and filing suit. Independently, SBI breached the 2010 Agreement by feigning interest in working together with Full Circle, using the 2010 Agreement to acquire Full Circle's confidential information and

marketing plans, and then deciding to use that information to negotiate against Full Circle and then take action to cut Full Circle out of its own plans.  That constitutes misuse of confidential information under the 2010 Agreement.  Thus, the very elements of breach of contract recited by SBI are alleged in the complaint: (1) the existence of an agreement (two agreements, in fact, the 2005 Agreement and 2010 Agreement) (Complaint, ¶¶ 11-12, 15-16, 42-43), (2) adequate performance by Full Circle (Complaint, ¶¶ 14, 44), (3) SBI breached the agreement (Complaint, ¶¶ 17-22, 45), and (4) damages (Complaint, ¶¶ 46-47).

SBI asserts that, to the extent that it breached the agreements by suing Full Circle, it is protected by litigation privilege.  But that is incorrect.  The "litigation privilege" asserted by SBI is a privilege against a claim for **_defamation_**, not breach of contract.  *See Aequitron Med. v. Dyro,* 999 F. Supp. 294, 297 (E.D.N.Y. 1998) (plaintiff cannot sue for defamation based on a judicial pleading).  The privilege extends to statements, not to acts. *See id.*  The other opinion cited by SBI has the same holding – a plaintiff cannot base a defamation claim on statements in judicial pleadings.  *Herzfeld & Stern v. Beck*, 175 A.D.2d 689 (1st Dep't 1991).  That is inapposite to a breach of contract when the party breaches by interfering with another company's business by acts including sending threatening letters and filing suit, as well as by co-opting confidential plans gained under a confidentiality agreement.

SBI next argues that the complaint was not specific enough in its allegations, but it was.  The case cited by SBI for this proposition, *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. N.Y. 1996), actually states exactly the opposite of what SBI represents.  In *Harsco*, the Second Circuit held that the district court was wrong in requiring allegations of specific representations and warranties that were breached, and that, on the contrary, "[t]hese pleadings may be adequate to state a breach of contract claim based on the Agreement." *Id.* at 348.  The court dismissed the

15

claim not for failure to provide specific enough allegations, but on jurisdictional grounds because there was no diversity.  *Id.*  Here, Full Circle has provided sufficient allegations of the contract, its performance, breaches by SBI, and damages.  The Rule 12(b)(6) motion should be denied.

### iii.  The Court Should Deny SBI's FRCP 12(e) Motion for More Definite Statement Regarding Full Circle's Claim for Breach of Contract.

SBI alternatively asks for dismissal under Rule 12(e), citing no authority.  As discussed above, Rule 12(e) only applies when a complaint "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996).  SBI does not assert that these conditions are met by the breach of contract allegations. Rule 12(e) "is designed to remedy unintelligible pleadings, not to correct for lack of detail." *Maxwell v. New York Univ.*, 2008 WL 5435327 (S.D.N.Y. Dec. 31, 2008).  Here, the Complaint includes a considerable amount of detail, well beyond that required by federal notice pleading standards. SBI is not entitled to a Rule 12(e) dismissal.

### D.  Full Circle's Claim for Breach of the Covenant of Good Faith and Fair Dealing (Count V) is Pled Properly.

SBI moves for dismissal of Full Circle's claim for breach of the covenant of good faith and fair dealing, but Full Circle's Complaint properly pleads this claim.  "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (N.Y. 2002).  "This covenant embraces a pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id. (quoting Dalton v Educational Testing Serv.*, 87 N.Y.2d 384, 389 (N.Y. 1995)).  The duties of good faith and fair dealing encompass "any promises which a reasonable person in the position of the promisee

SF/2657747v1

would be justified in understanding were included." *Id.* (*quoting Rowe v Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (N.Y. 1978)).  Full Circle properly pled that SBI violated those duties.

SBI argues that Full Circle's count for breach of the covenant of good faith and fair dealing is redundant with its breach of contract claim.  But any breach of the covenant of good faith and fair dealing must necessarily relate to dealings regarding contracts, as the implied duties are implied in contracts.  *See 511 W. 232nd Owners,* at 153.

To the extent SBI's argument asserts that Full Circle has alleged nothing more in its breach of the covenant claim than in its breach of contract claim, that is incorrect.  As set forth in the allegations of the Complaint, SBI caused Full Circle to provide confidential information on the basis that it was necessary to determine whether the companies could work together.  But SBI did not intend to work with Full Circle and instead intended to take that information to use for its own benefit, using it to coerce payment from Full Circle or to take action to eliminate Full Circle from Full Circle's own business plans.  (*See, e.g.,* Complaint, ¶¶ 15-20, 53.)  Thus, the wrongful conduct involves not just the fact that SBI breached its agreements, but also that it acted in bad faith and in contravention to the covenant of good faith and fair dealing in entering into and performing with respect to the agreements.  Additionally, these acts, even if they were determined later not to constitute breaches of the agreements, are nevertheless breaches of these implied duties because they deprived Full Circle of the benefit of the agreements.  (Complaint, ¶ 50.)  That is sufficient to state a claim for breach of the covenant of good faith and fair dealing.  *See 511 W. 232nd Owners,* at 153.  Thus, the scope of the count for breach of the covenant of good faith and fair dealing is not limited to or identical to the breach of contract claim.

Also, the Federal Rules of Civil Procedure permit a party to plead breach of the covenant of good faith and fair dealing as an alternative to breach of contract in the event that the

underlying actions are found not to constitute technical breach. *See DiFolco v. MSNBC Cable L.L.C.*, 2007 WL 959085, *12 (S.D.N.Y. Mar. 30, 2007), *aff'd in part and rev'd in part on other grounds,* 622 F.3d 104 (2d Cir. 2010) (distinguishing *Harris v. Provident Life and Acc. Ins. Co*., 310 F.3d 73, 81 (2d Cir. 2002) (the case cited by SBI to support its position)).  "[A] party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations." *Id.* (*quoting Chase Manhattan N.A. v. Keystone Distribs., Inc*., 873 F. Supp. 808, 815 (S.D.N.Y. 1994)).  In *DiFolco,* for example, the court found that the facts did not prove breach of contract, but nonetheless those same facts supported a claim for breach of the covenant of good faith and fair dealing.  *Id.*  As a result, the court properly denied a motion to dismiss the claim. *Id.*  Similarly, in *Wells Fargo Bank Northwest, N.A. v. Sundowner Alexandria, LLC*, 2010 WL3238948 (S.D.N.Y. Aug. 16, 2010), the court held that pleadings for breach of the covenant of good faith and fair dealing were not purely duplicative even though based on facts common to a breach of contract claim when the termination of the agreement was alleged to deprive the party of the benefit of the agreement.  *Id.,* at *12 n. 3 (dismissing claim on other grounds, but not for duplication with breach of contract).  Similarly, Full Circle's claim for breach of the covenant of good faith and fair dealing is proper.

SBI has denied that its acts constitute technical breaches of contracts.  But the covenant of good faith and fair dealing extends beyond the technical requirements of the contract, including "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *See 511 W. 232nd Owners,* at 153.  It is permissible for Full Circle to include a claim for breach of the covenant of good faith and fair dealing as an alternative ground for relief when SBI acted in a manner inconsistent with what Full Circle reasonably was justified in understanding was included in the agreements, including the

understanding under the 2005 Agreement that SBI would not interfere with Full Circle's marketing efforts to promote its Brewskee-Ball® skee-ball league. So, for example, were it to be found that issuing threatening letters and filing suit to cancel Full Circle's mark was not an express violation of the 2005 Agreement, it would still deprive Full Circle of the benefit of the agreement in breach of the covenant of good faith and fair dealing. Similarly, Full Circle reasonably understood that SBI would not use the confidential information obtained to assess and carry out threats and litigation against SBI instead of using it for proper purposes to determine how the companies could work together.

Additionally, as discussed above, again SBI requests a more definite statement under Rule 12(e), but fails to establish that "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Tagare v. NYNEX Network Systems Co.*, 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996).

### E.    Full Circle's Unfair Competition Claim (Count VI) is Pled Properly.

SBI dramatically misstates the law regarding unfair competition, citing a district court opinion for a point of law that was overruled on appeal. SBI cites *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 67 F. Supp. 2d 189, 215 (S.D.N.Y. 1999) for the proposition that in New York an unfair competition claim must be based on a federal statute. SBI neglects to mention that the Second Circuit overruled the district court on this point of law, stating, "New York's law of unfair competition is a broad and flexible doctrine that depends more upon the facts set forth than in most causes of action. It has been broadly described as encompassing any form of commercial immorality, or simply as endeavoring to reap where one has not sown; it is taking the skill, expenditures and labors of a competitor, and misappropriating for the commercial advantage of one person a benefit or property right belonging to another." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197-98 (2d Cir. 2001) (*quoting Roy Export Co. Establishment*

19

*v. CBS, Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)) (citations and ellipses in quotation omitted). Of the district court's opinion that unfair competition had to be based on a statute, the appellate court stated, "We again disagree with the district court's analysis of law but affirm." *Id.* at 197. The affirmance was based on a finding that the undisputed facts showed no wrongdoing, rather than that the claim was legally incognizable.  The other cited law by SBI is irrelevant, as Full Circle did not allege a violation of 15 U.S.C. § 45.

Unfair competition law in New York also can encompass allegations that "the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Friedman v. Wahrsager*, 2012 WL 273069 (E.D.N.Y. Jan. 30, 2012).  Here, Full Circle has alleged, among other items, that SBI misappropriated and misused its confidential information. (Complaint, ¶¶ 15-20, 53.)  The claim is legally appropriate and properly pled.

Additionally, as discussed above, again SBI requests a more definite statement under Rule 12(e), but fails to establish that "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." *Tagare v. NYNEX Network Systems Co.*, 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996).  This alternative motion should also be denied.

### F.     Full Circle's Sherman Act Violation Claim (Count VII) is Pled Properly.

SBI also challenges Full Circle's claim for SBI's violation of the Sherman Act. However, this claim is also properly pled and not subject to dismissal.  SBI overstates the pleading requirements for Sherman Act claims. Heightened pleading is not required; notice pleading is sufficient. With respect to Sherman Act claims, "[t]he Federal Rules of Civil Procedure do not require the plaintiff to plead the particulars of his claim." *Hammes v. AAMCO*

*Transmissions*, 33 F.3d 774, 778 (7th Cir. 1994) (reversing district court and holding pleading sufficient to set forth a Sherman Act claim).

SBI tries to take Full Circle's simple, straightforward allegations regarding Sherman Act violations and argue that some more complicated pleading is required, when it is not. Full Circle's pleading comports entirely with the requirements of a Sherman Act claim as recited in SBI's brief. The facts alleged by Full Circle, if taken as true, show that (1) SBI had market power (Complaint, ¶¶ 57-58), (2) SBI engaged in anticompetitive conduct (Complaint, ¶¶ 57, 59-60), and (3) Full Circle was damaged because of SBI's violation (Complaint, ¶ 61). Under notice pleading and Rule 8 of the Federal Rules of Civil Procedure, this is more than enough to put SBI on notice of the claims and allows SBI to respond meaningfully to them.

> ### i. *Full Circle's Complaint Sufficiently Pleads Facts Regarding Market Power.*

SBI attempts to require more than the law does with respect to Full Circle's allegations. For example, a motion to dismiss is disfavored with respect to Sherman Act claims based on purported failure to plead a relevant market. "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001). "The conclusion that genuine issues of material fact preclude a finding as to the relevant market as a matter of law is not unexpected. It frequently has been observed that 'a pronouncement as to market definition is not one of law, but of fact." *Id.* (*quoting Hayden Publ'g Co. v. Cox Broad. Corp.*, 730 F.2d 64, 70 n.8 (2d Cir. 1984)).

Full Circle's complaint in this respect is simple, but straightforward. It defines a market – it alleges that by refusing to let others refer to skee-ball games as "skee-ball games," SBI is improperly monopolizing the "skee-ball game market" throughout the United States. (*See, e.g.,*

Complaint, ¶¶ 57-58.)  That the geographic scope is the United States is clear in the Complaint from the scope of the purported trademarks (federal trademarks) and the imposition on Full Circle's U.S. national skee-ball league.  In this way, Full Circle has already identified a market and geographic scope.

Full Circle has also alleged that SBI has power in that market.  Indeed, SBI admits as much by wrongfully asserting that they have market power, but claiming that they are entitled to enforce their monopoly over use of the term "skee-ball."  SBI is ***self-professed*** to be the primary source of skee-ball machines in the United States. Indeed, on its own website, SBI states not only that it is the market leader in skee-ball games, but in the amusement game industry generally: "Skee-Ball Amusement Games, leader in the amusement games industry." (Harkins Decl., Ex. 6.)  "Since its founding in 1909, Skee-Ball, Inc. has been the industry leader for production of the highest quality redemption and midway skill games." (*Id.*)  Moreover, these are inferences to which Full Circle is entitled in pleading the Complaint. Full Circle pled that SBI has monopoly power, and should not at this stage be required to prove it as well -- pleading it is enough.  The case SBI relies upon for its position, *Hayden Pub. Co. v. Cox Broadcasting Corp*., 730 F.2d 64 (2d Cir. 1984), in reality belies SBI's argument on this point.  The *Hayden* opinion dealt with a case on summary judgment, after the evidence was in, and not on the pleadings. Moreover, the court in *Hayden* **denied** summary judgment, reversing the district court's ruling that the plaintiff had failed to show market power and holding that there sufficient facts in dispute to support a trial on the Sherman Act Section 2 violation claim. *Id.* at 69.

Monopoly power under the Sherman Act has been very simply laid out by the Supreme Court.  A party has monopoly power if it has "a power of controlling prices or unreasonably restricting competition." *United States v. E.I. du Pont de Nemours & Co*., 351 U.S. 377, 389

(1956).  Here, Full Circle has pled that SBI has the ability to unreasonably restrict competition by taking action to stop others from referring to skee-ball games in a manner that the public can understand.  Full Circle's pleading regarding SBI's market power is sufficient.

### ii. Full Circle's Complaint Sufficiently Pleads Facts Regarding Anticompetitive Behavior.

Again, SBI quotes from the Complaint proving that Full Circle has pled an element, and then complains that the Complaint is missing the very facts just quoted.  The facts are alleged throughout the Complaint, including, for example, in paragraphs 15-20, 57, 59 and 60.  Although SBI asserts that these are conclusory, they are not; they provide detailed allegations that SBI's anticompetitive behavior included sending cease and desist letters to skee-ball leagues and people using the term "skee-ball" when they had no valid right to stop people from using the phrase and misappropriating Full Circle confidential information to interfere with Full Circle's business plans regarding its skee-ball league.  Those are not mere conclusions, they are factual allegations.  Moreover, the Complaint pleads that SBI's acts were intentional, including sending cease and desist letters and intentionally asserting rights where it has none.  SBI does not even challenge these facts -- it is evident from SBI's own brief and complaint that it is acting to stop Full Circle from continuing its business, which by its nature is an anticompetitive act. The cases cited by SBI do not require more than this to support a Sherman Act claim.  Additionally, SBI cites no law that Sherman Act claims require heightened pleading, and the pleading clearly provides sufficient notice of the claim and its bases.

### iii. Full Circle's Complaint Sufficiently Pleads That Damage To It Resulted From the Anticompetitive Behavior.

SBI also argues that Full Circle has not pled anticompetitive injury, but it has done that as well.  (Complaint, ¶ 61.)  Full Circle did not merely allege that it was injured generally by SBI,

but that it was specifically injured by SBI's actions directed at Full Circle as pled in the Complaint, including, for example, in paragraphs 15-20 and 57-61.

The Complaint alleges that SBI's wrongful acts, including its efforts to put Full Circle out of business, wrongful use of Full Circle's confidential information to undermine Full Circle's business, direct threats to Full Circle that it would take legal action against Full Circle, its wrongfully filed lawsuit to enforce rights it does not have, and its actions in trying to maintain a monopoly of the term "skee-ball" to undermine competition of the skee-ball industry including, specifically, competition from Full Circle, all constitute anticompetitive acts against Full Circle which damaged it.  Thus, Full Circle did not simply plead a conclusion that it has been generally injured by general acts by SBI, but that SBI took specific and direct anticompetitive action against Full Circle which caused Full Circle injury.[2]  Thus, the pleading meets all of the legal requirements of a proper Sherman Act claim and should not be dismissed.

> ### iv.    SBI's Rule 12(e) Motion to Dismiss the Sherman Act Count is Unfounded.

SBI again moves in the alternative for dismissal to obtain a more definite statement under Rule 12(e), but, as discussed above, has never made a showing that would warrant such a dismissal.  Under notice pleading, dismissal under Rule 12(e) is rare and requires a pleading that "is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant

---

[2] In this way, the Complaint differs greatly from those cited by SBI.  In each of the cases cited by SBI, the complaints failed to plead any direct anticompetitive act from the defendant to the plaintiff, instead alleging that market power itself vaguely caused harm. *See, e.g., Nichols v. Mahoney,* 608 F. Supp. 2d 526, 544 (S.D.N.Y. 2009) (no action alleged between defendant and plaintiff, instead allegations were merely that hiring practices generally depressed industry wages).  Even then, the cited cases sometimes relate to the level of proof at summary judgment, not a challenge to the pleadings. *See, e.g., Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.,* 354 F. Supp. 2d 293, 307 (S.D.N.Y. 2004) (finding no proof of caused injury on summary judgment, not taking issue with notice pleading).  Here, it is alleged, for example, that SBI sent threatening letters, used confidential information to undermine Full Circle's business, and filed suit to stop Full Circle from competing, thereby damaging Full Circle.  Those are allegations of direct causation, not simply made as a conclusion.

SF/2657747v1

seriously in attempting to answer it." *Tagare v. NYNEX Network Systems Co.*, 921 F. Supp. 1146, 1153 (S.D.N.Y. 1996).  This alternative motion should also be denied.

## VI.    THERE IS NO REASON TO STAY FULL CIRCLE'S COMPLAINT.

SBI requests as alternative relief that the case be stayed until SBI's own case has concluded.  SBI cites no authority and provides no factual argument to support this requested relief.  Both complaints have been assigned to this Court.  They involve the same parties.  They should be consolidated, and they should be heard at the same time.  SBI has no basis to ask the Court to allow it to pursue its claims while delaying Full Circle from doing the same.  This requested alternative relief should be denied.

## VII.   CONCLUSION

Full Circle agrees to dismiss Counts II and III of its complaint in favor of the same claims asserted as counterclaims to the related complaint filed by SBI.  For the above reasons, the other counts in Full Circle's complaint are proper and should not be dismissed.

Dated:  February 3, 2012               Sedgwick LLP

                                              By: /s/ JGL_____
                                                   J. Gregory Lahr (JL9969)
                                                   gregory.lahr@sedgwicklaw.com

                                       125 Broad Street, 39th Floor
                                       New York, New York  10004-2400
                                       Telephone:     212.898.4014
                                       Facsimile:      212.422.0925

                                       Robert Harkins (pro hac vice)
                                       robert.harkins@sedgwicklaw.com
                                       333 Bush Street, 30th Floor
                                       San Francisco, California  94105
                                       Telephone:     415.781.7900
                                       Facsimile:      415.781.2635

                                       Attorneys for Plaintiff

SF/2657747v1