UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC, a New York limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>SKEE BALL, INC., a Pennsylvania corporation,<br><br>Defendant.<br><br><br>SKEE BALL, INC., a Pennsylvania corporation,<br><br>Plaintiff,<br><br>v.<br><br>FULL CIRCLE UNITED, LLC, a New York limited liability company,<br><br>Defendant. | Case No.: CV11-5476 (DLI) (LB)<br><br>Consolidated with:<br><br>Case No. 11-CV-6277 (DLI) (LB)<br><br>**NOTICE OF RE-FILING OF SKEE BALL, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR STAY AND FOR A MORE DEFINITE STATEMENT, DOCUMENT NO. 18, PER OCTOBER 23, 2013 COURT ORDER OF HON. MAGISTRATE JUDGE LOIS BLOOM**<br><br>Honorable Judge Dora L. Irizarry, Presiding<br><br>Magistrate Judge Lois Bloom<br><br>Complaint in lead case filed: November 8, 2011<br><br>Complaint in consolidated case filed: October 5, 2011 (USDC, Northern District California)<br><br>Consolidated case transferred to EDNY: December 23, 2011<br><br>Counterclaim filed: January 27, 2012<br><br>(E-Filing) |

**NOTICE**

TO:  THE HONORABLE JUDGE DORA L. IRIZARRY, THE HONORABLE

JUDGE LOIS BLOOM, AND TO ALL PARTIES AND THEIR ATTORNEYS

OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the October 23, 2013 Order of the Hon.

Magistrate Judge Lois Bloom, SKEE BALL, INC. ("SBI"), the defendant in Case No. CV11-

5476 (DLI) (LB), hereby re-files its Reply Memorandum of Law in support of its Motion to

Dismiss or Stay and For a More Definite Statement, previously filed on February 10, 2012 as Document No. 18, which is attached hereto as Exhibit "A".

|  |  |  |
|---|---|---|
|  |  | KRAUSS PLLC |
| Dated: November 1, 2013 | By: | /s/_____ |
|  |  | Geri S. Krauss |
|  |  | 1 N. Broadway, Suite 1001 |
|  |  | White Plains, New York 10601-2310 |
|  |  | Telephone: (914) 949-9100 |
|  |  | Facsimile: (914) 949-9109 |

RICHARD J. IDELL (*pro hac vice*)
IDELL & SEITEL LLP
Merchants Exchange Building
465 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259
*Attorneys for Skee Ball, Inc., a Pennsylvania corporation*

2
NOTICE

Dismiss or Stay and For a More Definite Statement, previously filed on February 10, 2012 as Document No. 18, which is attached hereto as Exhibit "A".

|  |  |  |
|---|---|---|
|  |  | KRAUSS PLLC |
| Dated: November 1, 2013 | By: | /s/_____ |
|  |  | Geri S. Krauss |
|  |  | 1 N. Broadway, Suite 1001 |
|  |  | White Plains, New York 10601-2310 |
|  |  | Telephone: (914) 949-9100 |
|  |  | Facsimile: (914) 949-9109 |

RICHARD J. IDELL (*pro hac vice*)
IDELL & SEITEL LLP
Merchants Exchange Building
465 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259
*Attorneys for Skee Ball, Inc., a Pennsylvania corporation*

2
NOTICE

# Exhibit "A"

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FULL CIRCLE UNITED, LLC, a New York limited liability company; <br><br> Plaintiff, <br><br> v. <br><br> SKEE BALL, INC., a Pennsylvania corporation, <br><br> Defendant. | Case No.: CV11-5476 (DLI) (LB) <br><br> **ORAL ARGUMENT REQUESTED** <br><br> **Documents Filed Herewith:** Reply Declaration of Richard J. Idell <br><br> Honorable Judge Dora L. Irizarry, Presiding Magistrate Judge Lois Bloom <br><br> Complaint filed: November 8, 2011 <br><br> **Date of Service: February 10, 2012** <br><br> (E-Filing) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS OR STAY, AND FOR A MORE DEFINITE STATEMENT

FULL CIRCLE UNITED, LLC ("FC") cannot deny that the claims in its Complaint (the "Compl." or "FC Action") are *identical* to the counterclaims FC asserted in SKEE BALL, INC.'s ("SB") first-filed action (the "SB Action").[1] The mere fact that FC deemed it necessary to refile <u>identical</u> claims as counterclaims in the SB Action (Doc. No. 30 in SB Action) belies its argument that Counts I, IV, V, VI and VII are not compulsory counterclaims.[2] As such, this action should be dismissed or stayed pending the resolution of the SB Action. FC's contentions in opposition to the additional relief SB seeks if dismissal or stay is not granted are equally meritless. FC has utterly failed to allege the requisite elements of Counts IV, V, VI and VII, and failed to allege any factual support for those claims. Those counts should be dismissed, or, at a minimum, FC should be required to file a more definite statement for each of these claims.

I. **<u>DISMISSAL OR STAY OF THE FC ACTION IS PROPER SINCE FC'S CLAIMS ARISE OUT OF THE SAME OPERATIVE FACTS AS THE SB ACTION</u>**

A. **Count I (Cancellation of Trademark)**: In its Opposition, FC relies exclusively on the holding in the <u>**Federal**</u> Circuit case *Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008) ("*Nasalok*"). That holding is not the rule applied by District Courts in the Second Circuit. The rule applied in this Circuit is that where the subject matter of a claim and counterclaim is "the use and validity" of the trademark(s) at issue, <u>the claims are compulsory counterclaims</u>. *J. Lyons & Co. v. Republic of Tea*, 892 F. Supp. 486, 490 (S.D.N.Y. 1995). In that case, in response to cease and desist efforts by the plaintiff, J. Lyons, the defendants

---

[1] FC states that the FC Action and the SB Action "are being consolidated." *E.g.*, Opp. (Doc. 14) pp. 1, 2, 6, 7 and 25. This is not so; there is no such motion pending. F.R.C.P. 42(a); *also see, Devlin v. Transportation Communs. Int'l Union*, 175 F.3d 121, 130 (2d Cir. N.Y. 1999). While the parties agreed that the two actions are <u>related</u>, under EDNY Local Civil Rules 1.6 and 50.3.1 (Doc. Nos. 4-6 in FC Action; Doc. Nos. 25, 29 and 31 in SB Action), they have not stipulated to consolidate the actions, nor has either party brought a motion to consolidate. If the two actions were to be consolidated, they should be consolidated into the first-filed SB Action. *See, Naula v. Rite Aid*, No. 08 Civ. 11364 (PGG), 2010 WL 2399364, at *5 (S.D.N.Y. Mar. 23, 2010).
[2] FC states that it "agrees to dismiss Counts II and III of its [C]omplaint in favor of the identical claims asserted as compulsory counterclaims" in the SB Action. Opp. p. 6. As such, SB does not address those claims herein. The time for any "agreement" was before FC filed an unnecessary separate action; not now.

commenced declaratory judgment actions seeking a determination invalidating and canceling J. Lyons' trademark. *Id.* at 489-490. The plaintiff, in a separate action, asserted claims against defendants for trademark infringement. *Id.* at 488. The Court specifically held that the subject matter of both the defendants' and plaintiff's claims was "the use and validity" of the trademark at issue, and held that the claims were compulsory counterclaims. *Id.* at 490 (underline added).

FC misleads this Court by stating in a footnote that the *J. Lyons* decision only applies to cases involving "two infringement claims," and not to cases involving "one claim for infringement and a different claim for invalidity." Opposition (Doc. 14) ("Opp.") p. 7, fn. 1. This is not an accurate reading of *J. Lyons*. The *J. Lyons* action *specifically* involved one claim for infringement and a different claim for invalidity.[3] *J. Lyons* at 490.

The first-filed SB Action asserts trademark infringement of SB's SKEE-BALL® mark (the "Mark"). FC's second-filed action seeks an order canceling and invalidating SB's Mark. Compl. ¶29. Because the subject matter of SB's and FC's claims concerns the use and validity of SB's Mark and FC's mark, FC's claims are compulsory counterclaims in this District. *See, J. Lyons* at 490. Count I should proceed as a compulsory counterclaim in the SB Action.

**B. Count IV (Breach of Contract):** FC alleges that its use of SB's Mark was authorized pursuant to an alleged 2005 oral agreement (the "2005 Agreement") and that SB breached the 2005 Agreement and the 2010 written Confidentiality Agreement (the "2010 Agreement") by pursuing "trademark infringement against" FC. Compl. ¶2. Given that both parties' claims address the parties' rights with respect to the SB Mark and FC's mark, "all of the

---

[3] In *J. Lyons* the defendants had the "first-filed" actions. As such, the plaintiff in that case was forced to file its infringement action as compulsory counterclaims in the defendants' first-filed declaratory relief actions, which sought the cancellation and invalidation of the plaintiff's mark. While the procedural timing of the FC and SB Actions is the opposite – *i.e.*, the SB infringement action was first-filed; the FC Action seeking cancellation and invalidity was second-filed – the holding of *J. Lyons* still applies: the subject matter of "all these claims . . . is the use and validity" of the SB Mark and FC's mark. *See, J. Lyons* at 490.

claims for relief arise out of the same transaction or occurrence," the very definition of compulsory counterclaims in F.R.C.P. 13(a).[4]

The phrase "transaction or occurrence" is construed liberally and flexibly in determining the compulsory nature of a counterclaim. *Gasser Chair Corp. v. Infanti Chair Mfg. Corp.*, No. CV-88-3931, 1991 WL 10931 at *2 (E.D.N.Y. Jan. 24, 1991); *Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101, 108 (S.D.N.Y. 1976). "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (U.S. 1926) ("*Moore*")[5]. That a claim and counterclaim are not precisely identical, or that a counterclaim embraces additional allegations, does not matter; the facts relied upon by the plaintiff rarely are in all particulars the same as those constituting the defendant's counterclaim. *Id*. Count IV should proceed as a compulsory counterclaim in the SB Action.

**C.    Count V (Breach of the Covenant of Good Faith and Fair Dealing):** For the same reasons as cited above in Section B, Count V should proceed as a compulsory counterclaim in the SB Action.

**D.    Count VI (Unfair Competition):** FC alleges in conclusory terms that SB has "acted with purposeful intent to injure FC and drive FC out of business." Compl. ¶53. The basis of this claim is that SB has threatened and brought "legal action to cancel FC's trademark and stop it from engaging in its business." Compl. ¶54.  The precise "unfair competition" that FC

---

[4] FC cannot have it both ways: it first argues that "[SB]'s complaint has no bearing on Full Circle's breach of contract, breach of the covenant of good faith and fair dealing, unfair competition or Sherman Act claims" and that the two "sets of claims arise from different operative facts." Opp. p. 1. Then, in complete contradiction, it argues that the 2010 Agreement, which "has a venue provision that states that <u>relevant disputes between the companies</u> must be litigated in New York," (Opp. p. 4, underline added) dictates that <u>both</u> actions proceed in the EDNY. If both claims are "relevant disputes" governed by the 2010 Agreement, then, logically both claims arise from the same operative facts.

[5] The United States Supreme Court decided *Moore* under Equity Rule 30, the predecessor to Fed. R. Civ. P. 13(a).

accuses SB of engaging in is the filing of the SB Action. Thus, for FC to now argue that its unfair competition claim is not a compulsory counterclaim in the SB Action misinterprets F.R.C.P. 13(a). A claim is compulsory when it bears a "logical relationship" to the claims in the first-filed action. *Moore* at 610. Count VI should proceed as a compulsory counterclaim in the SB Action.

E. **Count VII (Sherman Act Violation):** In arguing that this claim is not a compulsory counterclaim, FC again erroneously relies on the inapplicable Federal Circuit decision in *Nasalok*, and claims that its allegations do not "arise from the same transaction or occurrence set out in SB's complaint." Opp. p. 9. Its own statements, however, unequivocally demonstrate that the subject matter of both SB's and FC's claims is "the use and validity" of the trademarks – the standard for compulsory counterclaims applied by courts in this Circuit. *J. Lyons* at 490. FC states that "[t]he Sherman Act violation claim alleges that [SB] is improperly wielding its purported trademark to keep others from competing in the industry." Opp. p. 9. SB's purported "improper wielding" of its Mark is SB's "threaten[ing] and bring[ing] unlawful legal action against" FC – *i.e.*, filing the SB Action. Compl. ¶57. On their face, these claims address the "use and validity" of the parties' trademarks, rendering them compulsory counterclaims. *See, J. Lyons* at 490. Count VII should proceed as a compulsory counterclaim in the SB Action.

F. **Dismissal or Stay is Proper; FC's Claims, if Allowed At All, Should Proceed in The First-Filed SB Action:** The Court should dismiss the Complaint because all of the claims alleged in the Complaint should have been brought as compulsory counterclaims in the SB Action, where, in fact, they now have been brought. Alternatively, the Court should stay this action until the SB Action is resolved. *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. N.Y. 1991).

## II. IF THE FC ACTION IS NOT DISMISSED OR STAYED, COUNTS IV, V, VI AND VII SHOULD BE DISMISSED OR A MORE DEFINITE STATEMENT ORDERED

### A. Count IV (Breach of Contract)

#### 1. FC Has Failed to Plead the *Existence* of An Oral Agreement

The first element one must plead to state a claim for breach of contract is the *existence* of a contract. *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213-14 (S.D.N.Y. 2007). Under New York law: "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. New York State DOT,* 93 N.Y.2d 584, 589 (N.Y. 1999) (emphasis added). FC alleges no material terms whatsoever of the claimed oral 2005 Agreement. The material terms of a license agreement, at a minimum, would include a term, scope, price, quality control, and territory.[6] Given that none of those terms are alleged, nor do they exist, the alleged oral 2005 Agreement did not and does not exist.

#### 2. The Written 2010 Supersedes Any Purported Oral 2005 Agreement

FC's attempt to substantiate its claims regarding the oral 2005 Agreement in the face of the written 2010 Agreement consists of a disingenuous claim that the 2010 Agreement does not supersede the oral 2005 Agreement. Paragraph 1 of the 2010 Agreement states: "[SB] and [FC] are engaged in discussions relating to a proposed or **current** business relationship." *See*, Ex. "A" to Compl. ¶1 (emphasis added).[7] Thus, the explicit *subject matter* of the 2010 Agreement

---

[6] Also, FC admits that any license "would need to be in writing." Opp. p. 13. Moreover, under Paragraph 8 of the 2010 Agreement, any license must be in writing. *See*, Ex. "A" to Compl. ¶8.

[7] The copy of the 2010 Agreement attached to the Complaint is barely legible. Although Paragraph 7 of the 2010 Agreement specifically prohibits disclosing or disseminating information regarding the very existence of the 2010 Agreement, since FC has already attached it to its Complaint in violation of Paragraph 7, counsel for SB has

includes any "current" relationship between the parties. Paragraph 14 of the 2010 Agreement provides that it is the "entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous **oral** and written agreements …" *See*, Ex. "A" to Compl. ¶14 (emphasis added). Thus, the express terms of the 2010 Agreement supersede the 2005 Agreement as to the parties' "current" business relationship – *i.e.*, the "subject matter" of the 2010 Agreement.

3.  FC Has Not Pled Breach of The Oral 2005 Agreement or The 2010 Agreement

FC concedes that the 2010 Agreement is "a simple confidentiality agreement and not a licensing (or non-licensing) agreement," (Opp. p. 12) and that any grant of intellectual property rights "would need to be in writing." Opp. p. 13. SB has never, by license or otherwise, authorized FC to use SB's Mark, and any such agreement would need to be in writing; thus, FC received no intellectual property rights under the purported oral 2005 or 2010 Agreement. This is confirmed by Paragraph 8 of the 2010 Agreement, stating that "no license under any . . . intellectual property right is granted" and "any such license must be express and in writing." *See*, Ex. "A" to Compl. ¶8.

Also, FC, in conclusory terms only, alleges that SB breached the "Confidentiality Agreement." Compl. ¶¶ 2 and 45. However, FC has not alleged "what" confidential/proprietary information SB purportedly used or disclosed, "how" it allegedly used or disclosed that information, "where" or "when" this occurred, and "to whom" it was allegedly disclosed. FC *cannot* make any such allegations, because SB has not used or disclosed any of FC's confidential information, and, certainly no such facts are alleged.

Count IV should be dismissed without leave to amend, or FC should be ordered to

---

reviewed the 2010 Agreement and reproduced the relevant provisions in the attached Declaration of Richard J. Idell filed herewith so that the Court can clearly see what the provisions say.

provide a more definite statement of this claim.

### B. Count V (Breach of the Covenant of Good Faith and Fair Dealing)

FC's Opposition to dismissal of this claim is based upon a mischaracterization of SB's Motion. SB does not contend that New York law will not imply a covenant of good faith and fair dealing into contracts. Rather, what SB asserts is that New York law does not recognize a separate claim for relief for breach of the implied covenant of good faith and fair dealing when, as here, a breach of contract claim based on the same facts is also pled. *Harris v. Provident Life and Acc. Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (emphasis added). In such circumstances, the good faith claim is 'redundant' and cannot survive a motion to dismiss. *Simon v. Unum Group*, No. 07 Civ. 11426, 2008 WL 2477471, at *3 (S.D.N.Y. June 19, 2008).

While FC also attempts to differentiate its breach of contract claim from its claim for breach of the covenant of good faith and fair dealing (Opp. pp. 16-19), those attempts are belied by the Complaint, which speaks for itself: Count V contains only three substantive paragraphs, ¶¶49-51. The only substantive allegation made is that "[SB] failed to deal fairly and in good faith with [FC] with respect to the 2005 Agreement and 2010 Agreement, and by [SB]'s acts and omissions described above, [SB] deprived [FC] the right to receive benefits under the agreements." Compl. ¶50. The "acts and omissions described" are precisely the same facts upon which FC bases its breach of contract claim; the claims are redundant. Count V should be dismissed without leave to amend, or FC should be ordered to provide a more definite statement of this claim.

### C. Count VI (Unfair Competition)

Contrary to FC's Opposition, SB has not asserted that FC's unfair competition claim must be based on a federal statute. Opp. p. 19. Rather, SB argues that FC has not cited to any

basis, statutory or otherwise, on which a claim for unfair competition might proceed. SB does not know the grounds for this claim. Thus, Count VI should be dismissed, or FC should be ordered to provide a more definite statement of its claim.

### D. Count VII (Sherman Act Violation)

In obvious recognition of the fact that FC's conclusory allegations of violation of the Sherman Act ("Sec. 2") fail to: (1) define the relevant market; (2) adequately allege SB's purported market power; (3) allege any anticompetitive conduct; and (4) allege antitrust injury. *See*, *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 141 (E.D.N.Y. 2010) ("*Newsday*"), FC attempts now to remedy its pleading by citing to outside sources.[8] *E.g.*, Opp. pp. 3, 5, 22; *see,* letter re: evidentiary objections. Under F.R.C.P. 12(b)(6), the Court is limited to only "the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. N.Y. 2007) (underline added); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. N.Y. 1991). FC's new additional information should be disregarded.[9] F.R.C.P. 12(d) and (f). Even if the Court were to consider the extraneous information, FC's Sec. 2 claim still fails.

#### 1. FC Fails to Define the Relevant Market

Contrary to FC's Opposition, which asserts a lesser pleading standard,[10] and that it has met it, FC must allege the existence of, *and* adequately define the relevant market. *Newsday* at 142; *All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*, 596 F. Supp. 2d 630, 641 (E.D.N.Y. 2009).

---

[8] SB does not address the falsity of FC's statements regarding these outside sources, as it is not appropriate to do so in this Motion.

[9] F.R.C.P. 12(d) states that: [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

[10] FC argues that SB has overstated the pleading requirement for a Section 2 claim. Opp. pp. 20-21. However, the cases FC cites in support of this statement are **all pre-*Twombly*** cases. *Twombly* significantly changed the pleading standard in all civil actions, and for antitrust claims in particular. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Dismissal on the pleadings is appropriate where there is: (1) a failed attempt to limit a product market to a single brand, or (2) a failure even to attempt a plausible explanation as to why a market should be limited in a particular way. *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001). FC has failed on both counts; it has: (1) attempted to limit a product market to a single brand – Skee Ball[11] (Compl. ¶58); and (2) failed to give plausible explanation as to why the market should be limited in this particular way. Dismissal is fully appropriate here. *Id*. FC's allegations of a relevant market "clearly [do] not encompass all interchangeable substitute products." *Newsday* at 142.

### 2. FC Fails to Plead the Existence of SB's Monopoly Power

FC argues that it should not be required at this stage to prove SB's monopoly power; it claims it only has to plead it. Opp. p. 22. We agree, but case law is clear: when monopoly power is alleged in only a conclusory fashion the claim must fail. *Newsday* at 143, n. 15.

### 3. FC Fails to Plead SB's Alleged Anticompetitive Conduct

The possession of monopoly power *and* its willful misuse are necessary elements to establish a charge of illegal monopolization under Sec. 2. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-571 (1966); *Yankees Entm't & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 666 (S.D.N.Y. 2002). FC alleges anticompetitive behavior by SB comprised of sending cease and desist letters to enforce its Mark and filing suit. Compl. ¶¶ 59-60. These acts do not qualify as anticompetitive under 15 U.S.C. § 2.[12] FC fails to plead, and

---

[11] Relying on information outside of its Complaint (*e.g.*, SB's website), FC attempts to expand the definition of SB's monopoly power to power in the "amusement games" market. Opp. p. 22. This is not, however, the relevant market that FC alleged in its Complaint.

[12] SB's actions are also protected by New York's litigation privilege. *See, e.g., Aequitron Med. v. Dyro*, 999 F. Supp. 294, 297-298 (E.D.N.Y. 1998); *Herzfeld & Stern v. Beck*, 572 N.Y.S.2d 683, 685 (N.Y. App. Div. 1st Dep't 1991). FC argues that the litigation privilege in New York is limited to claims for defamation. Opp. p. 15. This is too narrow a reading of the privilege. Courts in the Second Circuit have held that the litigation privilege applies in

cannot plead, that SB has engaged in any activities of monopolization forbidden by Sec. 2.

### 4. FC Fails to Plead Antitrust Injury

A claim for violation of Sec. 2 must sufficiently allege antitrust standing and antitrust injury. "Conclusory allegations do not plead an antitrust injury." *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 544 (S.D.N.Y. 2009). FC makes the conclusory allegation that FC "has been damaged by SB's unlawful, monopolistic acts." Compl. ¶61. This falls short of the pleading standard and thus FC fails to plead antitrust injury or standing. *See, E&L Consulting, Ltd. v. Doman Indus.*, 360 F. Supp. 2d 465, 476 (E.D.N.Y. 2005). Count VII should be dismissed without leave to amend. *Newsday* at 141. Alternatively, FC should be ordered to provide a more definite statement of this claim.

## III. CONCLUSION

FC's claims are compulsory counterclaims in the SB Action. If the Court does not dismiss or stay the FC Action, Counts IV, V, VI, and VII should be dismissed without leave to amend, or a more definite statement ordered.

Dated: February 10, 2012        KRAUSS PLLC
                         By:    _____/s/_____
                                Geri S. Krauss
                                *Attorneys for Defendant Skee Ball, Inc.*
                                1 N. Broadway, Suite 1001
                                White Plains, New York 10601-2310
                                Telephone: (914) 949-9100; Facsimile: (914) 949-9109

                                RICHARD J. IDELL (*pro hac vice* pending)
                                IDELL & SEITEL LLP
                                465 California Street, Suite 300
                                San Francisco, California 94104
                                Telephone: (415) 986-2400; Facsimile: (415) 392-9259

---

subsequent litigation, such as the FC Action, whether that litigation is based on defamation <u>or any other theory</u>. *E.g., Andrews v. Steinberg*, 122 Misc. 2d 468, 476 (N.Y. Sup. Ct. 1983).